NANCY J. RICKER and others *vs.* THE CHARTER OAK LIFE INSURANCE COMPANY, Defendant, and LOUISA STANCHFIELD, Intervenor.

September 24, 1880.

Life Insurance—Surrender by Father of paid-up Policy on his own Life, payable to his Children.—S. procured of defendant company a policy of insurance for $2,000 on his own life, payable on his death to his then wife, Elizabeth A., if then living, otherwise to his children; or, if minors, to their guardian for their use. His said wife died first, leaving her husband and plaintiffs, their children, surviving. At her death all the premiums, which constituted the consideration for the policy, had been paid. Afterwards S. married the intervenor, by whom he had one child. After his second marriage he surrendered to the company, without the consent of his children, said policy, and took in consideration thereof, and in lieu of the original, a paid-up policy corresponding in date and terms with the original, save that it was made payable to his said second wife, the intervenor herein, for her benefit. *Held*, that such surrender was invalid and of no effect as against his children, and that " his children " included the issue of both marriages.

13

Appeal by the intervenor, Louisa Stanchfield, from an order of the district court for Hennepin county, *Young, J.,* presiding, sustaining the plaintiffs' demurrer to her complaint. The action was brought by the children of Samuel Stanchfield, by his first wife, upon the original policy of insurance mentioned in the opinion, and the intervenor, in her complaint, alleged the surrender of that policy, and the issuance of the second policy mentioned in the opinion, payable to herself.

*Lochren, McNair & Gilfillan,* for appellant.

*Woods & Babcock,* for respondents.

CORNELL, J. The original policy was issued upon the application of Samuel Stanchfield, the person whose life was insured, and all the premiums stipulated for were paid by him before the death of Elizabeth A. Stanchfield, who was his wife. By its terms the amount of the insurance was made payable, upon the death of the insured, to Elizabeth A. Stanchfield, his said wife, and, in case of her death before his decease, the same was to be paid to his children, or to their guardian, if minors, for their use and benefit. The said Elizabeth died intestate in July, 1874, leaving surviving her said husband, the plaintiffs herein, and one Joel B. Stanchfield, who were the issue of their marriage. After this Samuel Stanchfield married the intervenor herein, by whom he had one child, Carl S. Stanchfield, both of whom are now living. On February 13, 1878, Samuel Stanchfield died. After the decease of his former wife and his marriage with the intervenor, Louisa Stanchfield, the insured surrendered the original policy, which was cancelled, and a new one was issued in its place and as a substitute therefor, bearing the same date, and containing the same terms and conditions, save that it was therein provided that it should enure "to the sole and separate use and benefit" of said intervenor, Louisa Stanchfield, his second wife. The legal effect of this surrender and change, and the competency of Samuel Stanchfield to make it without the consent of his children, are the important questions presented for adjudication in this case.

Upon the allegations and admissions in the pleadings it must be presumed that the original policy was made, and its stipulations were to be performed, in the state of Connecticut, where the defendant company was created, organized, and did its business, and hence its legal effect, and the rights and obligations of the parties under it, depend upon the laws of that state; but as no evidence appears to have been given as to what those laws were, they are to be taken as identical with the common law of this state, independent of any statute upon the subject. Upon this theory the case has been argued, and it will be considered and determined accordingly.

The general rule upon the subject, as stated by Mr. Bliss, is this: "That a policy of life insurance, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his, by deed or by will, to transfer to any other person the interest of the person or persons so named. The person designated in the policy is the proper person to receipt for and to sue for the money. The principle is that the rights under the policy become vested immediately upon its being issued, so that no person other than those designated in it can assign or surrender it, and that in such assignment or surrender all the persons must concur, or the interest of those not concurring is not affected." Bliss on Life Ins. (2d Ed.) §§ 317, 337. This is held to be the rule in *The Succession of Kegler*, 23 La. 455.

Upon the facts in the case at bar, however, the court is not called upon to consider the rule as applied to a case where a portion of the premiums which constitute the consideration for the insurance still remains unpaid, and where the policy is liable to forfeiture in case of non-payment. Here the entire amount of the premiums stipulated for in the policy had been paid before the death of the wife, Elizabeth A. Stanchfield, and the subsequent attempted surrender of the

policy by her husband, whose life was insured. The case, therefore, stands in the same position it would if the whole consideration for the policy had been paid by the party procuring it at the time of its execution and delivery by the company; and the question is, whether, having made such payment, and taken out a policy for the benefit of his said wife and his children, payable in express terms to her, or, in the event of her prior decease, to his children, it was competent for him to surrender the same and take another policy in consideration of such surrender, and in lieu of the original, for the benefit of another party?

This question, it seems to the court, must be answered in the negative. The transaction on the part of Mr. Stanchfield was in the nature of an irrevocable and executed voluntary settlement upon his wife and children of the sum secured to be paid by the policy at his death, conditioned that the same should be paid to her for her benefit should she survive him; but, if not, then the same should be paid to his children, or, if minors, to their guardian, for their sole use and benefit. Nothing remained to be done on his part to make the intended gift of the policy to the beneficiaries therein named complete and effectual as against himself and all mere volunteers claiming under him. In paying for the insurance and procuring the policy to be issued, payable in express terms, upon his death, to his said wife, Elizabeth, if then living, and if not to his children, for their sole use and benefit, without any condition or stipulation reserving a right to change or alter any of the terms of the agreement, he did all that could well be done, under the circumstances, in the execution of an intention to vest in his said appointees the entire interest in the policy, and all rights thereunder. *Adams* v. *Brackett*, 5 Met. 280; *Landrum* v. *Knowles*, 22 N. J. Eq. 594.

What he did was a "clear and distinct act," wholly divesting himself of all ownership or control over the money paid for the insurance, disclaiming any interest in the policy, or

intention to take or hold it for himself or his legal representatives, at the same time putting it beyond his power so to do, by the stipulation obligating the company to pay the sum insured, whenever it should become due, to such of the persons named in the policy as might then be entitled thereto by its terms. Taking the delivery of the policy from the company, under these circumstances, can only be construed as an act of acceptance for the designated beneficiaries, and his subsequent holding of the same as that of a naked depositary, without any interest, for those entitled thereto. Such conduct on the part of the husband and father was both natural and proper, and it raises no presumption against the theory of a completed transaction on his part, as evidenced by his other acts. As the insured had no legal or equitable interest in the policy at the time of its surrender and cancellation, the act was a nullity, and could not affect the rights of his children, to whom it then belonged, and who alone could release the company from the obligations it contained. We concur in the opinion of the district court that "his children" · included the issue of both marriages.

Order affirmed.