## BROCKHAUS *v.* KEMNA and others.

*(Circuit Court, E. D. Wisconsin.* May, 1881.)

1. LIFE INSURANCE—BENEFICIARY—PROCEEDS—VESTED INTEREST.

The beneficiary named in a policy of life insurance has a vested interest in the proceeds of a paid-up policy, given in exchange for such life policy.

2. SAME—INFANT BENEFICIARY—VOIDABLE AGREEMENT.

A written agreement, executed before the surrender of the life policy, stipulating that the said proceeds should be placed in the hands of a trustee, and distributed as therein provided, is voidable by an infant beneficiary when such agreement did not constitute the substantial consideration for the exchange of the policies.—[ED.

In Equity.

This was a bill in equity, to which the defendant Alma Kemna interposed a demurrer. The bill alleged that on the seventeenth day of September, 1880, the defendant Alma Kemna commenced a suit in this court against the complainant and one Gustav Haug and one August Frank, in which she alleged that on the fifteenth day of October, 1878, the complainant, upon application made to the county court of Milwaukee county, was appointed her guardian during her minority; that as such guardian he, as principal, and said Haug and Frank, as sureties, executed a bond in the sum of $4,000 for the faithful discharge of his duties as such guardian; that default was made in the performance of the conditions of the bond; that no inventory of his ward's estate was ever filed by complainant; that about the twenty-fifth day of October, 1878, the sum of $1,755.12, which was the property of said Alma Kemna, came to the possession of complainant as her guardian; that on the tenth day of August, 1880, she became of age, that her guardian, the complainant, had never accounted for the moneys aforesaid; and that judgment in the action commenced by her for the penalty of the bond, with execution for the sum before mentioned, and interest, was demanded. It was further alleged in the bill that the defendants in the action so commenced by Mrs. Kemna appeared therein and filed their answer to her com-

v.7,no.6—39

plaint. The bill then proceeded to set out the following state of facts:

The complainant has three children, namely, Alma Kemna, now married to one Edward Kemna, Laura Brockhaus, and Clara Brockhaus,—the two last named being minors and unmarried, and living with complainant and his wife, the defendant Franziska Brockhaus. About 15 years since the complainant was engaged in mercantile business, and was in comfortable circumstances. In order to guard against possible future adversities, and for the purpose of providing a cash fund for the benefit of his daughters when they should become of age or should become engaged in marriage, he at various times between 1864 and 1867 caused his life to be insured by three several policies of insurance issued by the Mutual Life Insurance Company of New York, upon the endowment plan, payable respectively when he should arrive at 50, 55, and 60 years of age. These policies were made payable to the complainant's children, respectively; but it was alleged that they were never delivered to them, nor to any one for their use, but were continuously held and controlled by the complainant, who paid all the premiums thereon. The first of these policies was for $2,000, dated March 17, 1864, and payable to Clara Brockhaus when the insured should become 60 years of age. The second policy was for $2,000, dated October 12, 1867, and was payable to Alma Brockhaus (now Alma Kemna) when the insured should become 50 years of age; and the third of said policies was also for $2,000, dated October 12, 1867, and was payable to Laura Brockhaus when the insured should arrive at the age of 55 years.

In 1874 the complainant became embarrassed in his business, and lost all of his property. Because of pecuniary troubles he became unable in the years 1874, 1875, 1876, and 1877 further to pay the premiums which, from time to time, matured upon the policies, although, by the assistance of others, he succeeded for a time in keeping the policies in force. Subsequently, failing in this, after consultation with his wife and children—the latter being then minors, but of quite advanced age and discretion—it was concluded that the policies should be surrendered, and exchanged for fully paid-up policies. When about to perfect such surrender, it was found that the amounts eventually maturing, by virtue of the proposed new policies, would vary, and thereby cause inequality among the children, owing to the fact that the largest amount of premiums had been paid on account of the policies earliest maturing; the surrender value on each policy being as follows: On the policy to Alma, $1,690; on that to Laura, $1,170; on that to Clara, $990. In view of these circumstances, and for the further reason that all of the children were entitled to equal consideration and regard, it was agreed in family council that the insurance moneys, as they should eventually mature, should be paid over, when received, to the defendant Franziska Brockhaus, who should invest the same for the benefit of the children, and divide the proceeds in their support, maintenance, and education, as the necessities of their condition might require. The complainant then delivered up to the insurance company the policies by him originally taken out, and received in return

therefor three other paid-up policies,—one for $1,690, dated October 21, 1876, and payable in 1878 to Alma Brockhaus; one for $1,170, dated October 25, 1876, and payable in 1883 to Laura Brockhaus; and one for $990, dated April 3, 1877, and payable in 1888 to Clara Brockhaus. It was alleged that all of these policies, when issued, were held by the complainant, and were still in his possession, with the exception of the policy in favor of Alma, which matured in 1878.

It appeared further that on the thirty-first day of May, 1878, and before any of the new policies matured, for the purpose of avoiding, as it was alleged, any possible misunderstanding as to the eventual disposition of the proceeds of the policies, the agreement between the complainant and his family heretofore spoken of was reduced to writing, and was executed by the complainant and his said three children, and was then delivered to the defendant Franziska Brockhaus, and has since been held by her. The material recitals of that agreement are as follows:

"The said party of the first part (Theodore W. Brockhaus) having at different times had his life insured for the benefit of the parties of the second part, (Alma, Clara, and Laura Brockhaus;) and, whereas, some of the parties of the second part would, in case of the death of the party of the first part, be entitled to receive on account of such insurance more than others; and, whereas, the party of the first part is desirous of equalizing the several amounts coming to the parties of the second part by having the same divided equally among them, so that one should not have preference over the other; and, whereas, the said party of the first part is desirous, and so declares it to be his intention by the terms of this agreement, that his beloved wife, Franziska Brockhaus, shall take and receive the several sums of money as the same shall become due and payable to the said parties of the second part, and hold the same, and pay it over to the several parties of the second part as she, in her best judgment, shall deem it advisable to do: Therefore, it is mutually understood and agreed, by and between the parties hereto, that the wife of the said party of the first part, and the mother of the parties of the second part, Franziska Brockhaus, shall take the several sums of money that the said parties of the second part may be entitled to receive from the several insurance companies hereinafter mentioned, and invest the same or divide it between the parties of the second part as she, in her best judgment, shall deem it advisable to do; and to that end, and for that purpose, the said parties of the second part hereby release all claims upon said several sums of money, and authorize the said Franziska Brockhaus, in their names or otherwise, to receipt for, pay over, and invest all said several sums of money as hereinbefore mentioned."

The amounts to thereafter become due upon the several policies, and the persons to whom the same would become payable, were recited in the agreement, which bore the signatures and seals of the respective parties thereto.

It was further alleged in the bill that this agreement has, since its execution, remained in full force and effect, and been continuously acted upon in the control and disposition of the trust fund thereby created, and that the same has not been repudiated by either of the parties thereto except by Alma Kemna, who married on the seventh day of January, 1879.

The further facts disclosed in the bill were that when the paid-up policy for $1,690, to Alma, matured, the insurance company insisted that as she was a minor a guardian should be appointed for her, and thereupon

complainant, relying as he alleged upon the agreement before recited, procured an appointment as the guardian of Alma, and executed the bond before mentioned; and, having qualified as such guardian, he collected from the insurance company, on or about October 25, 1878, the sum of $1,755.12, and deposited the money in the bank, at 4 per cent. interest; and about the thirteenth day of May, 1880, the sum of $1,650, part of the proceeds of said policy, was used in the purchase of certain real estate situated in Milwaukee, the title thereof being taken in the name of Franziska Brockhaus. And it was alleged that this property is yielding some income, which enures to the benefit of the trust fund created by the before-recited agreement.

It was also stated in the bill that complainant, in the matters aforesaid, had acted in good faith, prompted by no other consideration than the welfare of his family, and a desire, in case of his death, to equally distribute among his children whatever might be thus saved for them; but that the defendant Alma Kemna, acting under the influence of her husband, had commenced the suit before referred to against him and his sureties on the guardian's bond, and was therein demanding a judgment on the ground that complainant had converted to his own use the moneys received upon the policy of insurance in which she was named as beneficiary.

These were the material allegations of the bill, the prayer of which was that the control and disposition of the insurance money, alleged to have been exercised and made, be quieted and affirmed by decree of this court; that the defendant Alma Kemna be restrained from in any manner claiming that a breach of the conditions of the guardian's bond had occurred, and from further prosecuting her action at law against the complainant and his sureties upon the bond; and also that, if the agreement before recited should be found not to sufficiently express the intent of the complainant in providing a trust fund, and for the eventual disposition thereof, or that upon its face it is ambiguous, or likely to cause misunderstanding between the parties thereto, it might be reformed, so that it should conform to the original intention of the parties, and be effectual for the future discharge of the trust alleged to have been thereby created; and that all the rights and obligations of the parties growing out of the insurance policies might be defined, settled, and adjudged.

The bill was demurred to on the general ground of want of equity, and for multifariousness.

*F. C. Winkler,* in support of demurrer.

*F. W. Cotzhausen* and *Geo. L. Jones, contra.*

DYER, D. J.    The determination of the first ground of demurrer involves the consideration of the rights and equities of the parties springing from the procurement of the policies of insurance upon the life of the complainant, and from the transactions recited in the bill.    And first, I do not see how even a court of equity can enforce against Mrs. Kemna, as a bar to any legal right she otherwise had, the arrangement first made in family council and subsequently reduced to writing, and executed as a written agreement, by which the proceeds of the insurance policies should be put into the hands of Franziska Brockhaus and distributed and used by her for the equal benefit of the three children.    It may be that this arrangement was, in a measure, the inducement to the exchange of the original policies for new and paid-up policies, though it would seem from the averments of the bill that the surrender of the first policies had been determined upon before the family arrangement was made, and that the real and original occasion of it was the inability of the insured to pay the premiums and keep those policies in force.    When the arrangement was made, and when it was subsequently put in the form of a written agreement and formally executed, Mrs. Kemna was under the disability of infancy.    As to her the agreement was voidable, and if she had any rights in the insurance on her father's life, that agreement was liable to be disaffirmed and repudiated on the attainment of her majority.    And, if she has now chosen to repudiate it, the court does not perceive how, even in equity, it can be interposed against legal rights, which, without such agreement, would exist in her favor.    I am of opinion, therefore, that in considering the case we are remitted to the question whether Mrs. Kemna had any vested right or interest in the paid-up policy of insurance in which she was named as beneficiary, or in the proceeds of that insurance, though in passing upon that question it may be necessary to further consider the effect of the alleged family understanding or agreement.

In support of the demurrer it is contended that Mrs. Kemna had such vested interest; that the complainant, whose life was insured for her benefit, could not revoke the policy or change its destination by his own act; that the transaction was in its legal effect an executed gift; and that there was nothing in the family arrangement or agreement that can be construed as an assignment of the policy from the complainant to his wife, or as a valid appointment of her as a new beneficiary.

In support of the bill it is claimed that a change of beneficiary was made before the original policy was exchanged for a paid-up policy; that the law of gifts must be applied to the case; that there was no such delivery of either of the policies to Mrs. Kemna, or to any one in trust for her, as to make a valid, executed gift; that Mrs. Kemna had no vested interest in the policies; and that the transaction was nothing more than a voluntary executory settlement, which was subject to revocation at any time before it was fully executed, and which was not susceptible of gift as a chose in action. Furthermore, it is insisted that by bringing suit on the guardian's bond Mrs. Kemna has ratified the contract which she made with her father, before recited, because, as it is claimed, she had no absolute vested interest in the first policy, and the paid-up policy in which she is claiming a vested interest was procured after the contract was originally made, and in pursuance of it. Precisely what are the rights, and what is the interest, of a designated beneficiary in an ordinary policy of life insurance, and to what extent the insured may control or change the ultimate destination of the insurance proceeds, is a vexed question, and some of the cases in which the question has been determined, cannot be reconciled.

In *Clark* v. *Durand*, 12 Wis. 248, the facts were peculiar. The insured procured insurance on her life, payable to Henry S. Durand as guardian of her son. Durand was not in fact such guardian, but advanced the money to pay the premiums. Subsequently, the assured, in consideration that Durand would thereafter continue to pay the premiums, transferred

the policy to him, and he kept the policy in force until her
death. He then collected the insurance and appropriated
the money to his own use. Thereupon Henry W. Clark
brought suit against Durand for the proceeds of the insur-
ance, claiming that he was the beneficiary in the policy, and
that his mother could make no assignment of the policy
which would defeat his alleged vested interest therein. The
action was held not maintainable, the theory of the decision
being, that the insured could not be compelled to keep the
policy in force; that the insurance, so far as Clark was con-
cerned, was merely a proposed gratuity, and that he was a
mere volunteer, having no present beneficial interest or vested
right in the policy, or the moneys secured by it, prior to the
transfer of the policy to Durand. The policy is characterized
in the opinion as an executory contract, which it was held
the insured could transfer to Durand with the assent of the
company, he agreeing to pay the premiums. Although the
court in this case do in effect lay down the rule contended
for by counsel in the case at bar, it is not to be overlooked
that the peculiar state of facts in *Clark* v. *Durand* might well
support the judgment, because, as is pertinently said by
Justice Cassoday, in commenting upon that case in *Foster* v.
*Gile*, decided by the same court, and hereafter referred to,
"it would seem that the equitable interests of the mother, and
her assignment to Durand, who paid all the premiums, were
sufficient to vest the absolute title in Durand, to whom the
insurance was in fact made payable. * * * Thus the
legal and equitable estate became united in Durand, and the
only question was whether the infant was entitled as *cestui
que trust.*"

In *Kerman* v. *Howard*, 23 Wis. 108, it was held that where
a husband survives his wife, having previously procured a
policy of insurance on his own life for her benefit and him-
self paid the premiums thereon, he may dispose of it by will
or otherwise. The construction of a statute of the state was
involved in this case; but, independently of the statute, the
court in effect held that the insured might change the policy

in favor of some other person, or use or assign it as a means of credit or security, or discontinue payment of the premiums and let the policy lapse, or that he might bequeath or assign the beneficial interest in the policy as he should think proper. It must, therefore, be said of this case that it follows in the track of *Clark* v. *Durand.*

The latest enunciation of the supreme court of this state on the subject is found in *Foster* v. *Gile,* 3 Wis. Legal News, 87.* In this case the person insured had procured a policy insuring his life for the benefit of two children. The father survived the children and died intestate, leaving a widow surviving him, and the question was whether the proceeds of the insurance belonged to the estate of the children or to the estate of the father. It was held that the beneficial interest of the children did not lapse by their death, but passed to their administrator to be distributed as intestate estate of such children. From the opinion of Mr. Justice Lyon it is evident that the court were not satisfied with the rule laid down in *Clark* v. *Durand;* and, though it is said that the rule must be adhered to, the learned justice, speaking for the majority of the court, expresses the opinion that there is a middle ground upon which the judgments in *Clark* v. *Durand* and *Kerman* v. *Howard* may rest, which, is that the taking of a policy by the insured, payable to another, is so far in the nature of an executed voluntary settlement that it vests in the person to whom the insurance money is made payable an actual subsisting interest in the policy, but that this interest is subject to the right of the insured to revoke the same, and retain it himself or vest it elsewhere. With great respect for the view thus taken, which really leads to the same result as that reached in *Clark* v. *Durand,* I am constrained to think that in such a case there must either be an actual vested interest or right in the beneficiary named in the policy, which the insured cannot of his independent volition take away, or no vested interest or right whatever; for the existence of a subsisting vested interest in the beneficiary seems incon-

*See, also, 8 N. W. Rep. 217.

sistent with a reserved right of revocation in the insured. And this evidently is the view of Mr. Justice Cassoday, who files a separate opinion in the case, marked by his usual research, and in which the authorities are industriously collected; for, while he concurs in the conclusion of the majority of the court, as I understand him, he plants his opinion on the ground that the children of the insured acquired an absolute vested interest in the policy as between them and their father.

These are the decisions upon the question in this state, and they are substantially followed by *Charter Oak Life Ins. Co.* v. *Brant,* 47 Mo. 419, and *Gamb* v. *Covenant Mut. Life Ins. Co.* 50 Mo. 44.

In *Ricker* v. *The Charter Oak Life Ins. Co.* 6 N. W. Rep. 771, decided by the supreme court of Minnesota, precisely the opposite view was taken from that held in *Clark* v. *Durand.* The facts were that a person procured insurance on his own life, payable on his death to his then wife, if then living; otherwise, to his children. His wife died, leaving her husband and their children surviving her. At her death all premiums had been paid. Afterwards the insured again married, and then, without the consent of his children, surrendered his policy to the company, and took a paid-up policy, payable to his second wife. It was held that the transaction, on his part, was in the nature of an irrevocable and executed voluntary settlement upon his first wife and the children, and that the surrender of the first policy was invalid, as against the children.

In *Sandrum* v. *Knowles,* 22 N. J. Eq. Rep. 594, a policy of insurance was taken by a wife on the life of her husband in favor of her children. After the payment of a succession of premiums she assigned the policy in payment of a debt of her husband, and the assignee paid the premiums thereafter accruing. After the death of the husband, the children claimed the whole sum due on the policy, and it was held that up to the time the mother ceased to pay the premiums, the transaction was an executed gift by the mother, enforce-

able in equity by the children, but that the acquisition of a further interest, by the payment of subsequent premiums, was executory, and was not acquired by her, and could not, therefore, be claimed by her beneficiaries. This ruling goes clearly on the ground that, up to the time of the assignment of the policy, and for all which the policy then represented, the children had a vested interest acquired by executed gift.

Mr. Bliss, in his work on Life Insurance, § 317, states it as the general rule "that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his or hers, by deed or will, to transfer to any other person the interest of the person named." These, including the Wisconsin cases, are some of the leading authorities on this question. Others are cited in the opinion of *Cassoday, J.*, in *Foster* v. *Gile, supra.* They are referred to rather for the purpose of showing the state of decision on the subject, than otherwise, for the facts set out in the present bill are somewhat peculiar, and seem to make this case distinguishable, except as some general principles are involved, from any of the decided cases to which I am referred.

Whatever principle of law might be regarded as applicable and controlling if the right of Mrs. Kemna to the first policy in which she was named as beneficiary, or its proceeds, was involved, an important fact in the case is that the complainant surrendered that policy and received from the company a paid-up policy, payable to Mrs. Kemna in 1878. The same was done with reference to the other policies in which his other daughters are named as beneficiaries. This new policy, payable to Mrs. Kemna, was an absolute promise on the part of the company, in consideration of the past payments of premiums, to pay her $1,690. It was not a policy liable to lapse, but it constituted an absolute, fixed liability, and the question is whether, as between the father and the daughter, it was not an executed gift from him which he

could not revoke. I can have no doubt that it was, unless the circumstances under which the act was done can have the effect to create other rights between the parties.

The complainant did all that he could do to make the gift of the policy to his daughter complete and effectual. He paid the premiums while the original policy was running, and procured the paid-up policy to be issued, payable in express terms to his daughter Alma at a specified time, and without any condition or stipulation in the policy reserving a right to change or alter it, so far as the bill shows; and, in the language of some of the cases cited, this was all that could well be done, under the circumstances, so far as the father and child were concerned, to vest in his appointee the entire interest in the policy and all rights thereunder. As between those parties no further ceremony or fact was needed to the perfection of the gift. *Sandrum* v. *Knowles, supra.* The gift was voluntary, but it was completely executed, and nothing further remained to be done but to await the period when the insurance company could be called on to make payment. That period was reached, and the complainant then received the proceeds of the insurance, not for himself or in his individual name or right, but as the guardian and representative of his daughter; so that in legal effect the payment was made to her as the beneficiary. This, if it were essential, was the consummative act, completing the gift beyond recall, unless, as before stated, the circumstances of the whole transaction so affected the relations of the parties as to qualify or change what would otherwise be strictly legal rights. Did the circumstances have that effect? I cannot think they did. Mrs. Kemna was not bound by the arrangement made in the alleged "family council," nor by the subsequent agreement which she signed. She was under the disability of infancy, and she could if she would, on attaining her majority, disaffirm and repudiate the agreement. The bill shows that the complainant was unable to continue the payment of premiums on the original policies, and that it was therefore determined that those policies should be surrendered and exchanged

for policies fully paid up; and it may be fairly inferred, from the allegations of the bill, that this was determined upon before any understanding was had that the proceeds of the paid-up policies should ultimately go to Mrs. Franziska Brockhaus. It was then arranged, for reasons stated in the bill, that such proceeds when realized should be received by Mrs. Brockhaus, but for the benefit of all the children. It is true that this transpired before the actual surrender of the original policies, and consequently there was a change of beneficiary, if any was in fact or legal contemplation made, before the paid-up policies were taken. But I can hardly think that the arrangement made in family council should be held to have operated as an assignment of the original policy running to Alma, least of all of the new paid-up policy which was subsequently made to her; and in this connection it is not to be overlooked that, notwithstanding what had previously transpired between the parties, the new policy was in terms made payable to Alma. The alleged change of beneficiary was not, in name at least, carried into that policy. It may, perhaps, be fairly presumed that the complainant, in taking a paid-up policy, relied on Mrs. Kemna's adherence to the understanding with reference to the ultimate appropriation of the proceeds; but I do not think it can be said, upon the present allegations of the bill, that the family arrangement was the substantial consideration which prompted the exchange of the old policies for new paid-up policies. And on the whole, with reference to the circumstances which preceded and which accompanied the surrender of the first policy running to Alma for the paid-up policy, as also with reference to the subsequent writtten agreement, it must, I think, be said that a change of beneficiary could not be made without the legal consent of Mrs. Kemna, and such consent was not given beyond her power of disaffirmance.

It is alleged that the complainant caused himself to be appointed guardian of Mrs. Kemna for the receipt of the insurance moneys, at the instance of the insurance company, and because it required him so to act. But I do not think

this can avail him against the legal consequences of the act, when taken in connection with the legal import and effect of the contracts by which the insurance company obligated itself to make payment.

It is claimed also that, by bringing suit on complainant's bond as guardian, Mrs. Kemna has ratified the action taken at the time of the surrender of the old policy for the paid-up policy, and therefore should not be permitted to make her present assertion of right to the proceeds of the latter policy. But it seems to me that such is not the effect of her proceeding, and that it is rather a disaffirmance of the agreement entered into by her during her minority by which Mrs. Brockhaus was to take the proceeds of the insurance. The assertion of her supposed right to those proceeds could only be made by demand of payment or suit for their recovery, or on the guardian's bond. And, in such case, to say that a resort to the only course open to her for such assertion of her alleged right operates as a ratification of that which she now disavows, seems to me equivalent to a denial of all power to disaffirm. Of course, if it were a directly-alleged fact that the whole inducement for taking the paid-up policy was an actual change of beneficiary, and a transfer of interest to Franziska Brockhaus as such beneficiary, a different phase of the question might be presented; but I do not understand such to be the meaning of the bill.

The court is not oblivious of the objects evidently in view when the family understanding was had in 1876. But I see no escape from the conclusions indicated, when the case is considered, as I think it must be, with reference to the absolute legal rights of the beneficiary named in the paid-up policy.

The demurrer to the bill will, therefore, be sustained.