### In re OREAR.[†]

(Circuit Court of Appeals, Eighth Circuit. February 23, 1910.)

No. 97.

BANKRUPTCY (§ 143*)—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICIES—"TRANSFERRED."

Under Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), which provides that a trustee in bankruptcy shall be vested with the title of the bankrupt to all property which he could "by any means have transferred," provided that, when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself or his estate, he may pay such surrender value and retain the policy, the proviso does not define and limit what insurance policies shall pass to the trustee, but only excepts from property which would otherwise pass insurance policies which have a surrender value, on payment to the trustee of such value. A policy which authorized the bankrupt to nominate or change the beneficiary at will is property which he might have "transferred," and as such passes under such section to his trustee, unless brought within the exception made by the proviso, although it is in terms payable to a designated beneficiary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 201; Dec. Dig. § 143.*

For other definitions, see Words and Phrases, vol. 8, pp. 7064–7070; vol. 8, p. 7819.]

Pollock, District Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Missouri.

In the matter of Derr Bros., a partnership, and Jacob W. Derr and Charles C. Derr, as individuals, bankrupts. On petition by Celsus Orear, trustee, to review an order of the District Court. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied April 18, 1910.

Joseph A. Wright (Warren D. Harris, on the brief), for petitioner. David Goldsmith, for respondent.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

CARLAND, District Judge. This is an original proceeding to review in matter of law an order of the United States District Court for the Eastern District of Missouri, made January 25, 1909, reversing an order of the referee in bankruptcy made May 27, 1908. The facts upon which the questions of law arise are as follows: On January 28, 1908, Derr Bros., a partnership composed of Jacob W. Derr and Charles C. Derr, were adjudged bankrupts, individually and as a firm. The petitioner, Celsus Orear, was duly appointed trustee of the estate. At the time of the filing of the petition in bankruptcy and the adjudication thereon, Jacob W. Derr had eight policies of life insurance upon his life for $2,500 each, issued by the Northwestern Mutual Life Insurance Company of Milwaukee, Wis. Four of said policies were issued January 27, 1906. Prior to the filing of the petition in bankruptcy Derr had paid the annual premiums on each of the last-mentioned policies for 2½ years. The next annual premium on each of said policies became due July 27, 1908. The remaining four policies were executed and delivered by the insurance company to Derr May 5, 1906. Prior to the filing of the petition in bankruptcy Derr had paid on these last-mentioned policies the annual premium for two years, and the third annual premium became due on June 5, 1908. All the policies were limited payment life policies. They each provided that after payment of premium thereon for three years or more, and upon a full and valid surrender of the policy, the insurance company would pay cash surrender values of specified amounts. On June 5, 1908, the third annual premium on four policies amounting to $198.50 on each policy became due, and these policies provided for a cash surrender value of $385 on each policy. By the terms of the four other policies the third annual premium amounting to $193.85 on each policy became due July 27, 1908, and these last-mentioned policies provided for a cash surrender value of $377 on each policy. These surrender values were payable to Derr, the insured, irrespective of the beneficiary named in the policy. The aggregate amount required to pay the third annual premium on the eight policies was $1,569.40. The aggregate amount of cash surrender values after the third premiums were paid was $3,048. The foregoing facts appearing to the referee by the petition of the trustee, the following order was made by the referee:

"That said bankrupt, Jacob W. Derr, forthwith execute and deliver to the trustee of this estate a good and sufficient written assignment conveying, assigning and transferring to said trustee all his right, title and interest in and to, and all rights, benefits, privileges and advantages accruing to him under, eight certain policies of life insurance issued by the Northwestern Mutual Life Insurance Company upon the life of said bankrupt, for the sum of $2,500 each, being policies numbered 656496, 656497, 656498, 656499, and 660328, 660329, 660330, 660331; and it is further ordered that said trustee pay or tender to the said the Northwestern Mutual Life Insurance Company, the annual premiums next accruing on said policies respectively, at and upon the dates when said premiums shall become due and payable upon said policies

respectively; and it is further ordered that if, within 30 days after the date of the payment of said premiums upon said policies respectively, said bankrupt, Jacob W. Derr, or any beneficiary named in any of said policies, shall pay or cause to be paid to the trustee of this estate the sum of money which under the terms of such policy can be realized by said trustee upon a surrender of such policy, then said trustee shall reassign and release such policy, or any policies in respect of which payments are so made, to said bankrupt, and deliver the same to him fully discharged from any and all claims of said trustee; and it is further ordered that in the event said bankrupt or said beneficiaries shall fail or neglect to avail themselves of the right to secure a reassignment of said policies, or any of them, in the manner hereinbefore specified, then said trustee shall thereupon surrender such policy, or policies, to the Northwestern Mutual Life Insurance Company, and collect from said company the cash surrender value thereof, as provided in said policies respectively."

The above order on petition of the bankrupt, Jacob W. Derr, was certified by the referee to the District Court for review. The District Court set aside said order, and its action in so doing is now before us for review. It is conceded that at the time of the filing of the petition in bankruptcy, January 7, 1908, the insurance policies, neither by their terms nor by any concession or practice of the insurance company, had any cash surrender value. The question of law arising upon the record is this: Did the insurance policies pass to the trustee by the adjudication in bankruptcy? If they did, then the trustee held the contracts in the same manner as a receiver, and if the referee, representing the United States District Court, should be of the opinion that it would be for the best interests of the bankrupt estate that the contracts be performed in whole or in part, he could very properly authorize the trustee to do so. It is to be presumed that if any question should arise in regard to the payment of individual and firm creditors the assets of the bankrupt estate would be marshaled as provided by law.

Section 70 of the bankruptcy act provides that:

"The trustee of the estate of a bankrupt upon his appointment and qualification * * * shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt except insofar as it is to property which is exempt, to all (1) documents relating to his property; * * * (3) powers which he might have exercised for his own benefit but not those which he might have exercised for some other person; * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." Act July 1, 1898, c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451).

We think the District Court fell into error in holding that the policies of insurance did not pass to the trustee. Its judgment that they did not pass was based upon the erroneous proposition that the proviso in section 70, above quoted, defined and limited what insurance policies should pass. Whereas, the true construction to be given to said proviso requires us to hold that it simply excepts from the prop-

erty of the bankrupt, which would otherwise pass to the trustee under the other provisions of section 70, policies of insurance which have a cash surrender value, either by the terms of the policy or by the concession of the insurance company. This construction was placed upon the proviso in the following cases: In re Slingluff (D. C.) 106 Fed. 154; In re Welling, 113 Fed. 189, 51 C. C. A. 151; In re Coleman, 136 Fed. 818, 69 C. C. A. 496; In re Mertens (D. C.) 131 Fed. 972. The Supreme Court of the United States in Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771, decided nothing contrary to the position here taken. The Supreme Court in the case mentioned decided that in order that the bankrupt should have the benefit of the proviso in section 70, it was not necessary that the insurance policy should in terms provide for a cash surrender value, but that it was sufficient to bring the policy within the proviso if, by the concession or practice of the company issuing the same, it had a cash surrender value. Neither is there anything in Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, which in any way conflicts with our views. In that case the Supreme Court held that the proviso in section 70 did not in any way modify or control section 6 of the same act relating to exemptions. Subdivision 5 of section 70 specifies as property the title to which will vest in the trustee:

"Property which prior to the filing of the petition he (bankrupt) could by any means have transferred or which might have been levied upon and sold under judicial process against him."

Subdivision 25, § 1, of the Bankruptcy Act, provides that the word "transfer" "shall include the sale and every other and different mode of disposing of, or parting with property, absolutely or conditionally as a payment, pledge, mortgage, gift or security." All of the policies of insurance in controversy contained the following provision:

"The insured may nominate a beneficiary or beneficiaries hereunder, and may also change any beneficiary or beneficiaries nominated by him or named in the policy."

Under this provision the insured was unequivocally given the right and power to change the beneficiary in each policy without the concurrence of the beneficiary named in the policy and even against the will of such beneficiary. Not only so, but this power was one which he could exercise for his own benefit. To illustrate: He could have borrowed money and have changed the beneficiary so that the lender would have held the policy as security for the repayment of his money. He also could have exercised this power so as to have secured indulgence from an existing creditor. He further could have exercised this power so as to have made the policy payable to his own estate. He still further could have exercised this power by naming as the beneficiary some trustee for all his creditors. See Atlantic Mut. Life Ins. Co. v. Gannon, 179 Mass. 291, 60 N. E. 933.

Of the case of Central Nat. Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370, it is enough to say that the policies there in question did not empower the insured to change the beneficiary, but contained provisions to the contrary, as is shown by the statement pre-

ceding the opinion. Neither did the policy in Gordon v. Ware National Bank, hereinafter cited, so empower the insured.

In the case of Gordon v. Ware National Bank, 132 Fed. 444, 65 C. C. A. 580, 67 L. R. A. 550, this court in an opinion where all the cases are cited held that the owner of a policy of insurance may lawfully and in good faith assign the same to a creditor who has no insurable interest in the assignor to secure the payment of a debt, and that on default of payment the creditor may foreclose the pledge and sell the policy at judicial sale. It necessarily results from this state of the law that Jacob W. Derr, prior to the filing of the petition in bankruptcy, could have transferred to one or more of his creditors the insurance policies in question to secure the payment of his debts. This being so, the policies were property which, under section 70, subd. 5, above mentioned, passed to the trustee upon the adjudication of Derr as a bankrupt. Whether or not policy No. 656496, which is expressed therein to be for the benefit of the wife of the insured, is to be regarded as exempt under section 7895, Rev. St. Mo. 1899 (Ann. St. 1906, p. 3749), and whether or not anything has occurred to avoid an exemption of the policy under that statute, are questions which were not in any manner presented before the referee or the District Court, and have not been presented in this court; so we leave them undecided. The United States District Court for the Eastern Division of the Eastern District of Missouri is therefore directed to vacate its judgment of December 19, 1908, reversing the order of the referee made May 27, 1908, and enter a judgment affirming the same, but without prejudice to the right, if any, of the wife of the bankrupt to claim the policy expressed to be for her benefit as an exemption under the state statute before mentioned.

POLLOCK, District Judge (dissenting). By the foregoing opinion of my associates it is determined each and all of the 8 policies of insurance involved herein, which are 10 payment life contracts, under the provisions of section 70a, of the bankruptcy act, by operation of law, as of the date of the adjudication (January 28, 1908), passed to the trustee in bankruptcy, with like effect as though governed by the terms of the proviso found in the section, and this notwithstanding the admitted fact that neither of said policies at the date of the adjudication had either by virtue of the terms of the contracts themselves, or by reason of a custom of the company issuing them, any surrender value whatever. And the same principles of the law are applied to each and all of the several different contracts, notwithstanding the further fact that in one the wife of the insured is named as beneficiary, and in each of three others a sister of the insured is so named, and in the four remaining no beneficiary is named, but by the terms of the contracts the power is reserved to the assured to appoint or change beneficiaries thereof at will. And this ruling is made in the absence of the beneficiaries, wife and sisters of the insured, from the record, on application of the trustee to the court for instructions as to his duties in reference thereto.

With this determination I do not agree. The statement of a few general principles admitted by all may serve to elucidate my reasons therefor.

It is common knowledge that the rights of all parties in interest in the estate of a bankrupt become fixed and are determined by the status of such parties at the date of the adjudication. Whatever the bankrupt may thereafter earn or whatever property rights he may thereafter acquire, do not pass to the trustee, but remain with him. Whatever debts he may thereafter contract may not be liquidated from assets of his estate in the hands of his trustee. The purpose of section 70a of the bankruptcy act is to define what property or rights of property possessed by a bankrupt at the date of the adjudication by operation of law pass to the trustee for the benefit of creditors. By the true construction of this section and its proviso, all property, by the laws of the state in which the bankrupt resided and the proceedings are instituted, exempt from subjection to the claims of the creditors, is exempt from the operations of the bankruptcy act. Policies of insurance held by the bankrupt having a cash surrender value payable to himself, his estate, or his representatives, but not by the laws of the state exempt, pass to the trustee, unless, within 30 days after the cash surrender value is ascertained by the company issuing them and stated to the trustee, there be paid or secured to him for the estate in his hands the cash surrender value found and stated by the company. Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018; Hiscock v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771; Steele v. Buel, 104 Fed. 972, 44 C. C. A. 287.

As it stands admitted the policies of insurance in dispute did not at the date of the adjudication have any surrender value whatever, it is quite too clear for argument they did not fall within the terms of the proviso found in the section. Therefore, in the light of the principles above stated, of necessity, the policies must be found to have been either such property or property rights of the bankrupt, at the date of the adjudication, as, by operation of law, passed absolutely to and vested in the trustee of the bankrupt estate for the benefit of creditors, or to have been, by virtue of the laws of the state of Missouri, or from their very nature, such contract rights as did not vest in the trustee, but remain outside the operation of the act, to be carried out and performed for the benefit of the beneficiaries according to their terms.

To my mind, the middle ground taken by the referee, and approved in the foregoing opinion, is wholly untenable, for it determines rights of the parties in policies of insurance having no surrender value whatever, and for this reason not touched by the terms of the proviso, to be within its application.

In so far as the exemption laws of the state of Missouri, where the bankrupt and his beneficiaries in the policies resided prior to the institution of the bankruptcy proceedings, and where the bankruptcy proceeding was instituted, are concerned, section 7895, Rev. St. 1899, of the state, in force at the time of the adjudication, provides, as follows:

"Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of the wife of the insured, shall inure to her separate benefit, independently of the creditors, executors and administrators of the husband: Provided, however, that in the event of the death or divorcement of the wife before the decease of the husband, he shall have the right to designate another beneficiary, upon written notice to the company, but such notice shall not be effected unless indorsed upon the policy by the president or vice president and secretary of the company issuing the policy. But when the premiums paid in any year out of the funds or property of the husband shall exceed the sum of five hundred dollars, such exemptions from such claims shall not apply to so much of said premiums so paid as shall be in excess of five hundred dollars, but such excess shall inure to the benefit of his creditors."

As the beneficiary in policy No. 656496 is the wife of the insured, and as the annual premium paid on this policy is only $193.85, while such contention is not made on the briefs and in the argument of solicitors for the bankrupt, yet I am at a loss to understand on what ground, in the light of the foregoing authorities, the trustee may claim or take any interest whatever in this policy, and shall therefore leave it out of any further discussion.

As to the remaining policies I find no law of the state by the terms of which they may be claimed as exempt. The question, therefore, is, Are they such property of the bankrupt as by the adjudication passed to the trustee under the provisions of section 70a of the act, and may it be so determined on this application of the trustee in the absence from the record of the sisters of the bankrupt, beneficiaries in policies Nos. 656497 to 656499, inclusive? There can be no question but that the sisters of the bankrupt have an insurable interest in his life. Lord v. Dall, 12 Mass. 115, 7 Am. Dec. 38. Therefore, in so far as the policies in which the sisters are named as beneficiaries are concerned, the question presented is, Do such contracts, having no surrender value at the date of the adjudication, represent accumulated property rights of the bankrupt, which, by operation of law, passed to the trustee, freed from any claim thereto by the beneficiaries, or do they represent money expended by the bankrupt to indemnify his sister beneficiaries against loss which may be by them sustained shall they outlive the bankrupt, on the happening of the contingency of his death. The foregoing opinion proceeds on the theory the policies in dispute at the date of the adjudication represent property rights of the bankrupt accumulated by his payment of annual premiums, which, by operation of law, passed to the trustee, because, as held, the bankrupt, prior to the filing of the petition in bankruptcy might have "transferred" them, as that word is employed in the bankruptcy act, and the case of Gordon v. Ware Nat. Bank, 132 Fed. 444, 65 C. C. A. 580, 67 L. R. A. 550, is cited in support of this holding. An examination of that case, however, will disclose the question here presented was not involved therein nor determined thereby. In that case the policy of which the proceeds was in dispute was written on the life of Gordon for the benefit of his wife, if she should survive him, if not, for the benefit of their children. After the premiums required by the terms of the policy to be paid had been paid, both the assured and his wife, as beneficiary, executed an assignment of the policy by way of pledge to the German Bank to se-

cure a debt of the insured. The bank brought suit against the insured and his wife to procure a decree foreclosing the pledge and for sale of the property in satisfaction of the debt due the bank, secured such decree, under which the policy was sold and delivered. The insured died before his wife. The contest in that case arising over the proceeds of the policy was between the administrator of the estate of the wife and an assignee of the purchaser at the foreclosure sale. The question determined was as to the right of such assignee, having no insurable interest in the life of Gordon, to receive the proceeds. Here the sisters as beneficiaries under the policies have executed no transfer of their rights. They have been neither consulted nor brought into this litigation. At the date of the adjudication the insurance company issuing the policies had in its possession no money or property of the bankrupt which, either according to the terms of the contract, or from its customary manner of transacting business with its policy holders, would be returned to any one. It had the absolute right at that date to retain every dollar theretofore paid it by the bankrupt as its own property. True, the amounts theretofore paid by the bankrupt as premiums represent more than an amount sufficient to indemnify the beneficiaries from loss of their insurable interest during the time the policies had remained in force and this for two reasons: (1) The policies are 10 payment contracts instead of natural life; (2) because the risk insured against increased as the age of the insured increased. Hence, the company having collected more than the amount required to protect it against the risk assumed while the policies had been in force, after payment of the third annual premium, contracted to return to the insured on the surrender of the policies and all claims thereunder, which included the rights of the beneficiary, a portion of the amount theretofore paid by the bankrupt and thus relieve itself of further risk of liability, but this agreement was, as said in Hiscock v. Mertens, supra, "the result of the age of the policy, and cannot be a test of other policies or of the construction of the law." It is this contract right of the bankrupt with the insurance company made for the benefit and protection of his sisters, on which, at the date of the adjudication, the insurance company would not and could not be compelled to pay any amount whatever to any person to which on the happening of the contingency that the insured should live until the date of the third annual payment of premium, and it should be then paid, which is held to constitute an asset of the estate, and by operation of law to have passed to the trustee as against not only the bankrupt but the beneficiaries in the policies. If this ruling be found the correct one, in reason, it must arise either from the absolute right of the insured by his own act and without the consent of his beneficiaries to assign and transfer his property rights in the policies held at the date of the adjudication, or from the exercise of some power reserved by the bankrupt in accordance with the terms of the contracts which passed to and vested in the trustee to be exercised by him under the provisions of section 70a of the bankruptcy act. By reference to the contracts it will be found no power of assignment or transfer is reserved to the bankrupt. The form and manner of assignments or

transfers of the policies is left to the parties in interest to be exercised under the general principles of the law. On this subject the contracts provide, as follows:

"Assignments. If this policy be assigned a duplicate of the assignment shall, within thirty days, be given to the company and satisfactory proof of assignee's interest be produced on making claim. The company in receiving or filing any assignment will not assume any responsibility for the validity thereof."

As no such power of assignment was reserved in the contracts themselves resort must be had to the principles of the law to ascertain whether the insured might by his own act, without the consent of the beneficiaries, assign or transfer the policies. In Central Nat. Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370, which was a contest between the beneficiaries in certain policies of insurance and the creditors of the insured who while insolvent had paid the premiums thereon, Mr. Justice Fuller, delivering the opinion of the court, among other things, said:

"Marine and fire insurance is considered as strictly an indemnity; but while this is not so as to life insurance, which is simply a contract, so far as the company is concerned, to pay a certain sum of money upon the occurrence of an event which is sure at some time to happen, in consideration of the payment of the premiums as stipulated, nevertheless the contract is also a contract of indemnity. * * * We think it cannot be doubted that in the instance of contracts of insurance with a wife or children, or both, upon their insurable interest in the life of the husband or father, the latter, while they are living, can exercise no power of disposition over the same without their consent, nor has he any interest therein of which he can avail himself, nor upon his death have his personal representatives or his creditors any interest in the proceeds of such contracts which belong to the beneficiaries to whom they are payable. It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named. Bliss on Life Insurance (2d Ed.) p. 517; Glanz v. Gloeckler, 10 Ill. App. 484, per McAllister, J.; Id., 104 Ill. 573 [44 Am. Rep. 94]; Wilburn v. Wilburn, 83 Ind. 55; Ricker v. Charter Oak Ins. Co., 27 Minn. 193 [6 N. W. 771, 38 Am. Rep. 289]; Charter Oak Life Ins. Co. v. Brunt, 47 Mo. 419 [4 Am. Rep. 328]; Gould v. Emerson, 99 Mass. 154 [96 Am. Dec. 720]; Knickerbocker Life Ins. Co. v. Weitz, 99 Mass. 157. * * *

"Conceding, then, in the case in hand, that Hume paid the premiums out of his own money, when insolvent, yet, as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see upon what ground the creditors, or the administrators as representing them, can take away from these dependent ones that which was expressly secured to them in the event of the death of their natural supporter. The interest insured was neither the debtor's nor his creditors'. The contracts were not payable to the debtor, or his representatives, or his creditors. No fraud on the part of the wife, or the children, or the insurance company, is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are to be held to constitute such gift or transfer. This seems to have been the view of the court below; for the decree awarded to the complainants the premiums paid to the Virginia company from 1874 to 1881, inclusive, and to the other companies from the date of the respective policies, amounting, with interest to January 4, 1883, to the sum of $2,696.10, which sum was directed to be paid to Hume's administrators out of the money which had been paid into court by the Maryland and Connecticut Mutual companies.

"But, even though Hume paid this money out of his own funds when insolvent, and if such payment were within the statute of Elizabeth, this would not give the creditors any interest in the proceeds of the policies, which belonged to the beneficiaries for the reasons already stated. Were the creditors, then, entitled to recover the premiums? These premiums were paid by Hume to the insurance companies, and to recover from them would require proof that the latter participated in the alleged fraudulent intent, which is not claimed. Cases might be imagined of the payment of large premiums, out of all reasonable proportion to the known or reputed financial condition of the person paying, and under circumstances of grave suspicion, which might justify the inference of fraud on creditors in the withdrawal of such an amount from the debtor's resources; but no element of that sort exists here. The premiums form no part of the proceeds of the policies, and cannot be deducted therefrom on that ground. Mrs. Hume is not shown to have known of or suspected her husband's insolvency, and if the payments were made at her instance, or with her knowledge and assent, or if, without her knowledge, she afterwards ratified the act, and claimed the benefit, as she might rightfully do (Thompson v. Amer. Ins. Co., 46 N. Y. 674), and as she does (and the same remarks apply to the children), then has she thereby received money which ex æquo et bono she ought to return to her husband's creditors, and can the decree against her be sustained on that ground?"

In that case it was held notwithstanding the admitted fact that the premiums paid in keeping in force the contracts of insurance were paid by Hume out of his property while insolvent, yet the proceeds of the policies passed to the beneficiaries, and were not recoverable by the creditors. This case would seem to be conclusive of the right of the bankrupt to have transferred the policies in dispute by his own act without the consent of his beneficiaries unless such power is reserved to him by the terms of the contracts themselves, the exercise of which power passed to the trustee under the terms of the bankruptcy act. By reference to the contracts found in the record it will be seen the only power reserved by the bankrupt which he might exercise at will was the power of nominating and changing the beneficiaries in the policies. Did such a power reserved by the bankrupt under the provisions of the bankruptcy act at the date of the adjudication pass to the trustee to be by him exercised at will? If so, it is clear he might, as against the beneficiaries and the insurance companies issuing the policies, substitute a representative of the creditors, and thus continue the payment of the annual premiums if permitted by the court, until the death of the insured, or until such time as the policies would have a cash surrender value, then surrender the policies and receive such cash surrender value. Section 70a of the bankruptcy act provides, in substance:

"The trustee of the estate of a bankrupt upon his appointment and qualification * * * shall be vested by operation of law * * * as of the date he (the bankrupt) was adjudged a bankrupt (3) powers which he (the bankrupt) might have exercised for his own benefit but not those which he might have exercised for some other person."

Is the power reserved by the bankrupt in these contracts of insurance of nominating and changing his beneficiaries such a power as he might have exercised for his own benefit, but not such as he might have exercised for the benefit of some other person? The policies in dispute are not endowment policies. They are life policies. Therefore, are payable only after the death of the insured. How, therefore,

178 F.—41

in the very nature of things, could the bankrupt exercise this reserve power for his own benefit, or by its exercise vest himself with an estate in the proceeds payable after his death. However this may be, it is quite clear the bankrupt could have exercised the power reserved for the benefit of any one having an insurable interest in his life, and as he could exercise the power for the benefit of another having an insurable interest in his life, under the very terms of the act in question, it is clear such power did not by operation of law, as of the date of the adjudication, pass to the trustee to be by him exercised. As bearing on this question, see Sugden on Powers (3d Am. Ed.) vol. 1, pp. 225, 226; In re Rose, L. R. 2 Ch. 348; Simpson v. Bathurst, L. R. 5 Ch. App. 202.

It follows, I think, the policies in dispute in which the sisters are named as beneficiaries, and which at the date of the adjudication had no cash surrender value whatever, do not represent such accumulated property interests of the bankrupt as he might, prior to the filing of his petition in bankruptcy, by his own act, without the consent of the beneficiaries, by any means, have transferred, or such as might have been seized on process issued out of judicial proceedings brought against him. On the contrary, I am of the opinion all beneficial interest in such policies at the date of the adjudication resided in the sister beneficiaries, and would there continue to reside, until, in accordance with the terms of the contracts, the assured had exercised the power reserved to himself of changing his beneficiaries, or until the contracts, being by the payments of annual premiums kept in force, and having attained such age as to possess a cash surrender value, they should, with the consent of the beneficiaries, be surrendered by the assured in exchange for such cash surrender value. For, it must be thought, the Congress in limiting the character of insurance policies, not by the laws of the state exempt, which pass to the trustee by virtue of the proviso contained in section 70a of the act, not alone to such policies as at the date of the adjudication have a cash surrender value, but to such only as possess a cash surrender value payable to the insured bankrupt, his estate, or his personal representatives, made such limitation in recognition of the settled principles of the law that as to those policies not having such cash surrender value, purchased and carried by the insured as indemnity to those having an insurable interest in the life of the assured bankrupt named as beneficiaries in the policies, such persons, and not the insured bankrupt, are the parties beneficially interested therein.

The view expressed by the majority of the court of necessity must result in passing all contracts of insurance (not exempt by the laws of the state) to the trustee in bankruptcy as of the date of the adjudication, notwithstanding the fact they may possess not a dollar of value to the estate, and the unhappy bankrupt may by operation of natural laws have come into that state of health which absolutely precludes the possibility of his procuring further protection for those dependent upon him. A view of the provisions of the bankruptcy act so futile of good, yet so fraught with disastrous results to an honest debtor and his innocent dependents, has not heretofore been taken by the courts

of this country. As said by Mr. Justice White in delivering the opinion of the court in Holden v. Stratton, supra:

"As section 70a deals only with property which, not being exempt, passes to the trustee, the mission of the proviso was, in the interest of the perpetuation of policies of life insurance, to provide a rule by which, where such policies passed to the trustee because they were not exempt, if they had a surrender value, their future operation could be preserved by vesting the bankrupt with the privilege of paying such surrender value, whereby the policy would be withdrawn out of the category of an asset of the estate. That is to say, the purpose of the proviso was to confer a benefit upon the insured bankrupt by limiting the character of the interest in a nonexempt life insurance policy which should pass to the trustee, and not to cause such a policy when exempt to become an asset of the estate. When the purpose of the proviso is thus ascertained it becomes apparent that to maintain the construction which the argument seeks to affix to the proviso would cause it to produce a result diametrically opposed to its spirit and to the purpose it was intended to subserve."

I am therefore of the opinion the policies under consideration, payable to the sisters of the bankrupt as beneficiaries, did not, by operation of law, pass to the trustee as assets of the estate in bankruptcy, but remained the property of the beneficiaries therein named. That the power reserved by the bankrupt of nominating and changing beneficiaries in the policies was not such a power as might have been exercised for his own benefit, but might have been exercised for the benefit of another, therefore the exercise of such power did not, under the terms of the act as of the date of the adjudication, pass to the trustee for the benefit of the estate in his hands.

In so far as the four remaining policies, Nos. 660328 to 660331, are concerned, in which the bankrupt had not at the date of the adjudication exercised the power reserved of appointing a beneficiary, and as the sums of money expended by the bankrupt in making payment of annual premiums were not expended for the purpose of procuring indemnity to any one having an insurable interest in his life, and as the interests of no third person have attached, I see no reason why any amount which may be obtained therefrom may not be made available to the estate in bankruptcy from payment by the trustee of the third annual premium thereon out of the estate in his hands, if such be the better policy, and the interests of the estate will be conserved thereby.