# MOORE *v.* RUCKGABER.

CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SECOND CIRCUIT.

No. 295. Argued November 21, 1901.—Decided March 17, 1902.

The war tax law of 1898 does not apply to intangible personal property located in this country and passing by the will of an alien domiciled abroad, to a daughter who is also an alien domiciled abroad, although the will was executed in this country during a temporary sojourn here.

As the tax is not imposed upon the property but upon the succession to the property, the law of the country in which the succession takes place determines the liability to taxation.

The law does not apply to property passing under a will, if it would not apply in case the testator had died intestate, and as in this case the property would have passed under the intestate laws of France, the succession is not subject to a tax here, although the will was executed in this country.

THIS was also an action brought in the Circuit Court for the Southern District of New York by Ruckgaber, as executor of the last will and testament of Louisa Augusta Ripley-Pinède, against the Collector of Internal Revenue, to recover an inheritance tax paid to the defendant upon certain personal property in the city of New York. It was argued with No. 287, *ante,* 578.

The material facts, as set forth in the certificate, are briefly as follows :

The testatrix, Louisa Augusta Ripley-Pinède, died at Zürich, Switzerland, on September 25, 1898, being at that time a nonresident of the United States, and having, for at least eight years immediately preceding her death, been domiciled in, and a permanent resident of, the Republic of France. She left a will dated November 6, 1890, which was made in New York and in conformity to the laws of that State, where the testatrix was then sojourning, whereby she bequeathed all her personal property in the United States to her daughter, Carmelia von Groll, who was then, and is now, also a non-resident of the United States, domiciled in Germany. Said will was probated

in the Surrogate's Court of Kings County, New York, on February 17, 1899, and letters testamentary were thereupon issued to the defendant in error, a resident of said county and State, who alone qualified as executor.

At the time of her death the testatrix owned a claim in account current against one Carl Goepel and one Max Ruckgaber, Jr., constituting the firm of Schulz & Ruckgaber, both of whom resided in the county of Kings and State of New York. She was also the owner of a share of stock in The Tribune Association, a New York corporation. The testatrix was also the owner of bonds and coupons of divers American corporations hereinafter particularly described. Said chose in action, stock, bonds and certificate constituted all the personal property of every kind in the United States of America referred to in the said will. The value of the said property of the testatrix at the date of her death, September 25, 1898, as fixed and determined by appraisers duly appointed, was $105,670.70. On or about the 15th day of June, 1899, upon the written demand of the collector of internal revenue for the first district of New York, and under protest the executor did make and render in duplicate to the said collector a return of legacies arising from personal property of every kind whatsover, being in charge or trust of said executor, passing from Louisa Augusta Ripley-Pinède to her said daughter by her will, as aforesaid.

The following questions of law which arose out of the foregoing facts were certified to this court:

"1. Can the said personal property of the non-resident testatrix, Louisa Augusta Ripley-Pinède, actually located within the United States at the time of her death, September 25, 1898, be deemed to have a *situs* in the United States for the purpose of levying a tax or duty upon the transmission or receipt thereof under sections 29, 30 and 31 of the act of Congress entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' approved June 13, 1898?"

"2. Was the transmission or receipt of the said personal property of the non-resident testatrix, Louisa Augusta Ripley-Pinède, which was actually located in the United States at the time of her death, September 25, 1898, subject to taxation un-

der sections 29, 30 and 31 of the act of Congress entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' approved June 13, 1898?"

*Mr. Solicitor General* for the United States.

*Mr. Alfred E. Hinricks* for defendant in error.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

This case differs from the one just decided only in the fact that the will of the non-resident testatrix was executed in New York, November 6, 1890, during a temporary sojourn there, although, as in the preceding case, the testatrix was domiciled abroad, and bequeathed her personal property in New York to a daughter, who was married, and also lived abroad.

There can be no doubt whatever that, if Madame Pinède had died intestate, the personal property would not have passed by the law "of any State or Territory," (using the words of the act,) but by the laws of France. The question then is, whether the condition is changed, if the property pass under a will executed in this country. In the *United States* v. *Hunnewell,* 13 Fed. Rep. 617, cited in the preceding case, the will was executed in France, but the decision of Mr. Justice Gray, holding that the tax was not payable, was not put upon the ground that the will was executed in a foreign country; but upon the broader ground that the legacy duty was payable only upon the estate of persons domiciled within the United States. In delivering the opinion he observed: "Section 124" (of the similar act of 1864) "imposes a duty on legacies or distributive shares arising from personal property 'passing from any person possessed of such property, either by will, or by the intestate laws of any State or Territory;' it does not make the duty payable when 'the person possessed of such property' dies testate, if it would not be payable if such person died intestate; and if Madame de la Valette had died intestate, her son would not have taken a distributive share 'by the intestate laws of

any State or Territory,' but, if at all, by the law of France, the domicil of his mother at the time of her death. And section 125, by requiring the executor or administrator to pay the amount of this duty 'to the collector or deputy collector of the district of which the deceased person was a resident' leads to the same conclusion."

The real question then is, as said by Mr. Justice Gray, whether the act makes the duty payable when the person possessed of such property dies testate, if it would not be payable if such person died intestate, although the actual question involved in this case differs from the one there involved, in the fact that in the *Hunnewell* case the will was executed abroad, while in the present case it was executed in this country.

Bearing in mind the fact that the tax in this case is not upon the property itself, but upon the transmission or devolution of such property, the question again recurs, as it did in the preceding case, whether the succession took effect in France or in New York. We are aided in the solution of this problem by the language of section 2694 of the New York Code of Civil Procedure, also cited in the preceding case, which is as follows: "Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other" (than real) "property situated within the State, and the ownership and disposition of such property where it is not disposed of by will, are regulated by the laws of the State or country of which the decedent was a resident at the time of his death." Now as, if Madame Pinède had died without leaving a will, her property would have passed under the intestate laws of France and been exempt from this tax, it follows under the *Hunnewell* case that it is equally exempt though it passed by will.

The will of Madame Pinède is confined to her personal property in this country, and the record does not show whether she was possessed of other property in France or in any other foreign country. If she had, that property would either pass by will executed there or under the intestate laws of her domicil. For reasons stated in the prior opinion, we do not think Congress contemplated by this act that the estates of deceased persons should be split up for the purposes of distribution or taxa-

tion, but that, so far as regards personal property, the law of the domicil should prevail.

A question somewhat to the converse of this arose in the *Estate of Romaine*, 127 N. Y. 80, which was a proceeding to compel payment of an inheritance tax by the administrator of the estate of Romaine, who had died intestate in Virginia, leaving a brother and sister resident in New York, as his next of kin. The act of 1887 subjected to an inheritance tax " all property which shall pass by will or by the *intestate laws of this State,* from any person who may die seized or possessed of the same while a resident of this State, or if such decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State." The question was whether the property of Romaine, who died in Virginia intestate, was subject to the tax. After deciding that the tax applied to two classes, namely, resident and non-resident decedents, the court observed : " But does it apply to all persons belonging to these two classes ? It is not denied that it applies to all *resident* decedents, and to all non-resident *testators,* but it is contended that it does not apply to non-resident *intestates* because property 'which shall pass . . . by the intestate laws of this State ' is expressly mentioned to the implied exclusion of property passing by the intestate laws of other States. This is the position of the appellant, whose learned counsel claims that the act, in its present form, was designed to meet cases of succession by will, but not of succession by intestacy, unless the intestate was a resident of this State. It is difficult, however, to see why the legislature should discriminate simply for the purposes of taxation between the property of a nonresident decedent who made a will, and of one who did not. It is not probable that there was an intention to tax the estates of non-resident testators and to exempt those of non-resident intestates, because there is no foundation for such a distinction. . . . Property of the same kind, situated in the same place, receiving the same protection from the law, and administered upon in the same way, would naturally be required to contribute toward the expenses of government upon the same basis, regardless of whether its last owner died testate or intestate."

By parity of reasoning, we think it follows that no discrimination was intended to be made between non-residents who died testate, even though the will were made in this country, and those who died intestate; and as we have held in the preceding case that the law does not apply to non-residents who died intestate, or testate under a will executed abroad, we think it follows that it does not apply to deceased persons domiciled abroad who left property by will executed in this country.

*The questions certified must, therefore, be answered in the negative.*

Mr. Justice White and Mr. Justice McKenna concurred in the result.