## UNITED STATES *v.* HAMMERS.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 314.   Argued April 12, 13, 1911.—Decided May 15, 1911.

Under the Desert Land Act of March 3, 1877, c. 107, 19 Stat. 377, as added to by the act of March 3, 1891, c. 561, 26 Stat. 1096, a desert land entry is assignable.

Where a statute is so ambiguous as to render its construction doubtful the uniform practice of the officers of the Department whose duty has been to construe and administer the statute since its enactment and under whose constructions rights have been acquired is determinatively persuasive on the courts.

There is confusion between the original desert land act of 1877 and the act as amended in 1891 as to whether entries can be assigned, and the court turns for help to the practice of the Land Department in construing the act, and that has uniformly been since 1891 that entries were assignable.

THE facts, which involve the construction of Desert Land Acts of 1877 and 1891 and the assignability thereunder of entries of desert lands, are stated in the opinion.

*Mr. Ernest Knaebel,* for the United States.

*Mr. L. H. Valentine,* with whom *Mr. Nathan Newby* was on the brief, for the defendant in error.

*Mr. Oscar A. Trippett, Mr. J. M. Eshleman, Mr. Le-Compte Davis* and *Mr. William C. Prentiss* filed a brief, by leave of the court, as *amici curiæ,* in support of the position of the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case is here to review an order sustaining a demurrer to an indictment found against defendant in error, herein called defendant.

Omitting the repetitions and accentuations which are usually found in indictments, the following are the facts stated in the indictment in this case: On the fourteenth of August, 1907, one Granville M. Boyer made a desert land entry for certain lands under the public land laws of the United States, and particularly under and by virtue of the act of Congress approved March 3, 1877, 19 Stat. 377, c. 107, or 2 U. S. Comp. Stat. 1548, the land being then open to entry, settlement and reclamation and he having the proper qualifications under the laws. The record was number 3903. On the twenty-sixth of August he assigned, by an instrument in writing, his entry and his interest in the land which was the subject thereof to one Beulah Rose Beekler, she being a citizen of the United

States. She filed the assignment with the Register and Receiver of the United States land office of the Los Angeles, California land district.

On the thirtieth of January, 1908, and while entry No. 3903 was pending before the Register and Receiver, Beulah Rose Beekler, "in pretended compliance" with the public land laws of the United States and the rules and regulations of the General Land Office of the Department of the Interior relating to desert land entries, applied at the office of one Daniel Elder, clerk of the Superior Court of Imperial county, within the southern division of the southern district of California, to make her first yearly proof of improvement, irrigation, reclamation and cultivation of the land, with the intention of thereafter obtaining a patent from the United States therefor. Elder was an officer authorized to receive such proof and to administer oaths to witnesses.

Defendant appeared and gave testimony in such proceeding and subscribed the same, swearing that the statements therein were true.

The specific details of his testimony are not necessary to the points of law which are involved. It is enough to say that it is set out in the indictment with particularity and showed that the improvements required by the desert land laws were made, and it is charged, that the testimony was wilfully and corruptly given, he knowing it to be false. And it was further charged that the testimony was filed with the Register and Receiver as part of the proceedings in relation to the entry.

The indictment was demurred to on the ground that it did not state facts sufficient to constitute an offense against the United States. The demurrer was sustained.

The question of law in the case is the materiality of defendant's affidavit, and that again depends upon whether the desert land laws authorized an assignment of the entry.

These propositions have been argued at great length. Besides oral argument a brief of 71 pages is presented by the United States, which is replied to by defendant's brief of 132 pages, and supported by a brief of *amici curiæ* of 135 pages, and there are supplemental briefs besides. In our view, however, the case does not require so much expansion, and for its general discussion we may refer to the able opinion of the court below. We disagree, it is true, with that learned court, but the grounds of our disagreement can be briefly stated.

We may assume that under the Desert Land Act of 1877, an entry was not assignable. The contention of the Government, however, is, opposing that of the defendant, that by the additions made by §§ 5 and 7 of the act of March 3, 1891, 26 Stat. 1096, c. 561, to the desert land law an entry is assignable. These sections read as follows:

"Sec. 5. That no land shall be patented to any person under this act unless he or his assignors shall have expended in the necessary irrigation, reclamation, and cultivation thereof, by means of main canals and branch ditches, and in permanent improvements upon the land, and in the purchase of water rights for the irrigation of the same, at least three dollars per acre of whole tract reclaimed and patented in the manner following: Within one year after making entry for such tract of desert land as aforesaid the party so entering shall expend not less than one dollar per acre for the purposes aforesaid; and he shall in like manner expend the sum of one dollar per acre during the second and also during the third year thereafter, until the full sum of three dollars per acre is so expended. Said party shall file during each year with the register proof, by the affidavits of two or more credible witnesses, that the full sum of one dollar per acre has been expended in such necessary improvements during such year, and the manner in which expended, and at the expiration of the third year a map or plan showing the character and

extent of such improvements. If any party who has made
such application shall fail during any year to file the testi-
mony aforesaid the lands shall revert to the United States,
and the twenty-five cents advanced payment shall be for-
feited to the United States, and the entry shall be cancelled.
Nothing herein contained shall prevent a claimant from
making his final entry and receiving his patent at an ear-
lier date than hereinbefore prescribed, provided that he
then makes the required proof of reclamation to the aggre-
gate extent of three dollars per acre: Provided. That proof
be further required of the cultivation of one-eighth of the
land.

"Sec. 7. That at any time after filing the declaration,
and within the period of four years thereafter, upon mak-
ing satisfactory proof to the register and receiver of the
reclamation and cultivation of said land to the extent and
cost and in the manner aforesaid, and substantially in ac-
cordance with the plans herein provided for, and that he or
she is a citizen of the United States, and upon payment to
the receiver of the additional sum of one dollar per acre
for said land, a patent shall issue therefor to the applicant
or his assigns; but no person or association of persons shall
hold by assignment or otherwise prior to the issue of pat-
ent, more than three hundred and twenty acres of such arid
or desert lands, but this section shall not apply to entries
made or initiated prior to the approval of this act. Pro-
vided, however, That additional proofs may be required
at any time within the period prescribed by law, and that
the claims or entries made under this or any preceding act
shall be subject to contest, as provided by the law, relating
to homestead cases, for illegal inception, abandonment, or
failure to comply with the requirements of law, and upon
satisfactory proof thereof shall be cancelled, and the lands
and moneys paid therefor shall be forfeited to the United
States."

The learned District Court in its discussion, stated

that the following proposition is established: "Where an applicant for public lands of any sort has done all that the law requires to entitle him to a patent, he is justly regarded as its equitable owner and may, at any time thereafter, transfer his equitable estate, although the legal title be in the Government," citing, among other cases, *Myers* v. *Croft*, 13 Wall. 291; *Deffeback* v. *Hawke*, 115 U. S. 393; and this ownership and right of assignment the court concluded §§ 5 and 7 only recognized. In other words did not grant or create a new right, but referred to a right already existing, and that, therefore, the act of 1891 did not authorize an assignment of the land by an entryman until he had acquired such equitable title by the performance by him, and by him only, of the conditions prescribed.

It was conceded that the Interior Department had uniformly placed upon the act of 1891 a different construction in five decisions, the earliest of which was rendered on December 22, 1895, and the last in June, 1900, and it was also conceded that the rule often authoritatively announced is that "where a court is doubtful about the meaning of an act of Congress, the construction placed upon the act by the department charged with its enforcement is in the highest degree persuasive if not controlling." Such decision, however, it was said, only determined in cases of doubt, and, as the court found no ambiguity in the act, decided against the ruling of the Department and the contention of the Government. It recognized the force of such a uniform practice in the Land Office and of the fact which was urged upon its attention, that a large number of reclamations had been effected by assignees in the very valley where the entry in controversy had been made, and said that such fact and practice would resolve doubts in favor of the Government, if it, the court, had any.

We do not find the act of 1891 as clear as the learned District Court did, and must give to decisions of the Land

Department the weight to which in such case, the court
acknowledged, they are entitled.

The act of 1891, was an amendment of the act of 1877,
and made a change in the latter act, and a change in the
provisions of an act usually indicates, or is intended to in-
dicate, a change of purpose, to enlarge or restrict the pro-
visions of the prior law.    This very natural presumption
seems to be contested by defendant.   We say "seems"
because it may be that it is only its application in the
present case which is questioned.    Counsel say the "in-
tent to amend, modify or repeal any provision of the act
of 1877, must be made clearly to appear by the terms of
the amendatory act."   In support of this it is urged that
the dominant purpose of the act of 1877, was that an en-
tryman should personally reclaim the land in the man-
ner prescribed by the act, and because of the purpose and
to secure it, the courts and the Department had ruled that
before reclamation the entryman had no rights which he
could transfer.    Counsel, therefore, deny that a change
was made in the act of 1877 by the act of 1891, and urge
that where a statute which had been construed by the
courts has been reënacted in the same, or substantially
the same, terms, the legislature is presumed to have
adopted the construction as part of the law unless a dif-
ferent intention is expressly declared.    But was there a
substantial reënactment of the act of 1877 by the act of
1891?    In the act of 1877, the word "assignors" did not
appear at all, and the act required, it is contended, that
reclamation should be personally made by the entryman.
To this requirement the opening words of § 5 of the
act of 1891 present a contrast.   It reads: "That no land
shall be patented to any person under this act unless *he
or his assignors* (italics ours) shall have expended in
the necessary irrigation, reclamation, and cultivation
thereof  .  .  .   three dollars per acre for the purpose
aforesaid.            "   The meaning of these words con-

sidered alone is clear.   An entryman or his assignors may make reclamation.   It is said, however, that the words which follow them explain them and take all ambiguity from them.   It is provided that "within one year after making entry  .  .  .   the party so entering shall expend not less than one dollar per acre" and that *he* (italics ours) "shall in like manner" expend the same sum during the second and third year.   "Said party," it is further provided, "shall file the proofs of such expenditure" and at the expiration of the third year a map or plan showing the character and extent of such improvements."  And again: "If any party fail to file the proofs the entry shall be canceled."   It is finally provided that nothing in the section contained "shall prevent the claimant from making *his* final proof and receiving *his* patent at an earlier date than that prescribed for the performance of the conditions required.   These provisions, it is insisted, designate the entry and entryman and only him.   This is made indubitable, it is urged, by the use of the pronouns "he" and "his," excluding every other person, and requiring the expenditure and improvements to be made by him individually.   But the opening sentences of the section are to be accounted for, and these are, to repeat, "That no land shall be patented to any person under this act unless *he or his assignors* shall have expended in the necessary irrigation, reclamation, and cultivation thereof  .  .  . at least three dollars per acre.  .  . ," and the word "assigns" is also used in § 7.   Counsel feel the necessity of accounting for the provision and to give it a meaning that will neither contradict nor make doubtful that for which they contend.   Their explanation is, "that Congress used the words 'or his assignors' in § 5 and 'or his assigns' in § 7 only in recognition of the right that every entryman has under any of the public land laws of the United States to make an assignment after he has acquired the equitable title to the land embraced within

his entry." In other words, as observed by the court below, a new right was not created, but a right already existing was incidentally referred to. In aid of this conclusion, and in opposition to the contention made by the Government that "assignors" designated persons who may legally do the things prescribed in § 5 before the equitable title vests, it is answered that an applicant can have more than one assignor but they must be assignors of perfected entries, perfected by the performance of the conditions by the respective entrymen. Examples are given under the practice which obtained in the Land Department prior to 1908 (an act of that year limits the assignment to one) of issuing patents to an applicant who had taken assignment of more than one entry if the aggregate area of the land embraced in the entries did not exceed 320 acres. But to support this view reliance is had upon decisions made after the act of 1891, and which, it is admitted, "apply to assignments made before the vesting of equitable title, as permitted by the Land Office since 1891." That, it is insisted, is not material so far as the point is concerned. But manifestly it is material. To support and give force to a practice of the Land Department under the act of 1891, to impugn its construction of the act, is certainly confusing. We cannot assume that the Land Department did not know what it was about and made its practice under the act oppose its construction of the act. But, it may be granted that there is strength in the argument, and in that based on the words of the statute. They are, however, opposed by arguments of equal, if not greater strength. Conceding then that the statute is ambiguous, we must turn as a help to its meaning, indeed in such case, as determining its meaning, to the practice of the officers whose duty it was to construe and administer it. They may have been consulted as to its provisions, may have suggested them, indeed have written them. At any rate their practice, almost coinci-

dent with its enactment, and the rights which have been acquired under the practice, make it determinately persuasive.

We are constrained, therefore, to reverse the order of the District Court sustaining the demurrer and remand the case for further proceedings.

*Reversed.*