83 F.2d 103 (1936)
WALKER
v.
UNITED STATES.
No. 10415.
Circuit Court of Appeals, Eighth Circuit.
March 30, 1936.
*104 Josiah E. Brill, of Minneapolis, Minn. (Samuel H. Maslon, of Minneapolis, Minn., on the brief), for appellant.
Harry Marselli, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and George F. Sullivan, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for the United States.
Before STONE, SANBORN, and THOMAS, Circuit Judges.
STONE, Circuit Judge.
This is an appeal by plaintiff in an action for refund of estate taxes levied on the proceeds of certain insurance policies on the life of Gilbert M. Walker who died testate in December, 1928, while a resident of Minnesota.
There were six such policies outstanding at death of decedent. In each of these the named beneficiary was appellant, who was the wife of decedent, the residuary legatee under his will, and an executrix. In four of the policies (all issued by the Union Central Life Insurance Company), insured reserved the right to change the beneficiary. In another policy (issued by the New York Life Insurance Company), it was provided that, if appellant should die before the insured, payment was to be made to his "executors, administrators or assigns," and in the application for the policy (made part of the policy) insured signified that in case of appellant's prior death the insurance should "revert to insured." In the remaining policy (issued by the Mutual Benefit Life Insurance Company), there was a similar survival clause as to beneficiary and a provision permitting loans up to cash surrender value upon satisfactory assignment of the policy. The four Union Central policies were issued in 1927 and but two premiums paid before death. Of these premiums, amounting to $14,345, appellant paid from her own funds slightly more than one-half ($7,688). The entire proceeds from the six policies were paid direct to appellant as beneficiary thereunder.
The tax return filed by the estate of Gilbert M. Walker included no proceeds from any of these policies. Subsequently, the Commissioner determined that the proceeds ($100,903.32) from the four Union Central policies should be included in the gross estate, and collected a tax upon the excess thereof above the statutory $40,000 exemption. Proceeds from the two other policies were not included by the Commissioner. The additional tax paid by appellant was $4,872.27. This tax was paid and the estate closed in May, 1931.
June 27, 1934, appellant brought this action for refund of $3,746.05 on the *105 ground that the prorated amount of insurance covered by her contribution to the premiums on these four policies was exempt from the tax. The Commissioner denied this claim, and also pleaded, as an offset to any recovery by appellant, a tax due on the proceeds of the two policies (New York Life and Mutual Benefit) which he had omitted to include as part of the gross estate. The general issues so framed were (1) the right of appellant to the refund, and (2) if this right be sustained, the right to the offset. Jury being waived, the trial court found against plaintiff on the refund, and from that judgment she appeals.

1. Right to Refund.
The governing statute is section 302(g) of the Revenue Act of 1926 (44 Stat. 9, 71, 26 U.S.C.A. § 411(g), which provides that the value of the gross estate for estate tax purposes shall include amounts receivable from insurance "to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries [than the executor] as insurance under policies taken out by the decedent upon his own life." The controversy is over the proper construction to be given "taken out by the decedent upon his own life." Appellant contends that this expression is ambiguous; that "taken out by the decedent" means paid for by or for him, and therefore excludes such insurance as is paid for by the beneficiary; that this construction is the one given by the Treasury Regulation (article 25, Regulations 70)[1] at the time of the death of decedent, of administration of his estate and for some years thereafter; that, while this regulation was in force, Congress passed acts covering the same subject-matter and using the identical language above quoted from section 302(g) of the Revenue Act of 1926; that this court must presume Congress thereby approved the construction in the above regulation, and therefore must accept such construction unless it is "plainly erroneous"; and that such construction is not plainly erroneous.
Appellee contends that "taken out by the decedent" means applied for by him; that the construction in the above regulation is entirely erroneous; and that such regulation was effectively superseded by a later (1934) regulation (article 25, Regulations 80).[2]
These opposed contentions present, as the prime issue, the influence of these two Treasury Regulations upon the construction, by this court, of the statutory expression "taken out by the decedent" as *106 used in the Revenue Act of 1926. It is well first to state generally the rules of law defining the place of such departmental, or executive, interpretations upon the construction of statutes by the courts.
The determination of the construction of the meaning of congressional acts is a judicial function. This function and duty is so entirely and purely judicial that it is beyond the power either of the executive (Manhattan General Equipment Co. v. Commissioner, 56 S.Ct. 397, 80 L.Ed. ___, decided February 3, 1936; Louisville & N. R. Co. v. United States, 282 U.S. 740, 757, 51 S.Ct. 297, 75 L.Ed. 672) or of the Congress (Levindale Lead & Zinc Min. Co. v. Coleman, 241 U.S. 432, 439, 36 S.Ct. 644, 60 L.Ed. 1080; Koshkonong v. Burton, 104 U.S. 668, 678, 26 L.Ed. 886) to control.
If the statutory meaning is clear, there is no place for rules which aid in ascertaining the meaning of the statute, and neither legislative nor executive construction nor both is of any aid or force. Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S. Ct. 337, 77 L.Ed. 739; Louisville & N. R. Co. v. United States, 282 U.S. 740, 757, 51 S.Ct. 297, 75 L.Ed. 672; Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566. However, if the act is ambiguous (Massachusetts Mut. Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739; Louisville & N. R. Co. v. United States, 282 U.S. 740, 757, 51 S.Ct. 297, 75 L.Ed. 672; United States v. Missouri Pac. R. Co., 278 U. S. 269, 281, 49 S.Ct. 133, 73 L.Ed. 322; Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566), the courts will, in their search for the proper meaning of the act, give consideration to a later legislative construction (New York, P. & Norfolk R. Co. v. Peninsula Exchange, 240 U.S. 34, 39, 36 S.Ct. 230, 60 L.Ed. 511) or to the construction by an executive for administrative or enforcement purposes (United States v. Hammers, 221 U. S. 220, 225, 226, 228, 229, 31 S.Ct. 593, 55 L.Ed. 710).
Instances occur where both the executive department and Congress adopt the same construction. This usually happens where the courts "presume" a congressional sanction of an executive construction from the situation that Congress repeats the statutory language without substantial change while the executive construction is existent and being applied in the administration of the earlier act. This "presumption" is based upon the suppositions that the Congress which enacted the later acts knew of the administrative construction and would have clarified the situation as to the later acts had it been dissatisfied with such construction. It is true that most of the decisions recognizing this presumed congressional sanction have been dealing with the construction of the later acts, as to which the situation is somewhat different, since those Acts might be regarded as passed in the light of the then existing executive construction, and therefore as having that construction in mind and adopting it as the meaning for the later acts. However, even that situation does not lessen the natural inference that by such subsequent action Congress gave its approval to the executive construction of the same language in the earlier act concerning which that construction came into being. Massachusetts Mut. Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739; Murphy Oil Co. v. Burnet, 287 U.S. 299, 302, 307, 53 S.Ct. 161, 77 L.Ed. 318; Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 307, 51 S.Ct. 418, 75 L.Ed. 1049; Heiner v. Colonial Trust Co., 275 U.S. 232, 235, 48 S.Ct. 65, 72 L.Ed. 256; Provost v. United States, 269 U.S. 443, 458, 46 S.Ct. 152, 70 L.Ed. 352  being cases involving construction of the earlier act.
The weight or force which the courts will, in their construction of an act, give to such executive or legislative constructions, has been variously phrased by the Supreme Court. Similarly, there is a variety of expression as to such weight and force where the court conceives the executive construction to be also approved by Congress. In such latter situation, it has been said that the executive construction has the "force of law" (Hartley v. Commissioner, 295 U.S. 216, 220, 55 S.Ct. 756, 758, 79 L.Ed. 1399; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367); that it "must be accepted" (Alaska Steamship Co. v. United States, 290 U.S. 256, 262, 54 S.Ct. 159, 161, 78 L.Ed. 302); that it "will not be overturned except for very cogent reasons" (Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796); that it would be given "great weight, even *107 if we doubted the correctness of the ruling" (Costanzo v. Tillinghast, 287 U.S. 341, 345, 53 S.Ct. 152, 154, 77 L.Ed. 350); that it will not be "disturbed except for reasons of weight" (McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 512, 75 L.Ed. 1183); that "were the matter less clear" the court "should be constrained" to follow it (Poe v. Seaborn, 282 U.S. 101, 116, 51 S.Ct. 58, 61, 75 L. Ed. 239); that it will be followed "when not plainly erroneous" (New York, New Haven & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 402, 26 S.Ct. 272, 281, 50 L.Ed. 515). When the quotations in the above sentence are considered in connection with the issues and situations in which they were severally used, it would seem that a safe statement of this rule of construction is that, where a statutory provision is ambiguous, and the executive department which must apply and enforce it declares a construction (not in itself ambiguous, Burnet v. Chicago Portrait Co., 285 U.S. 1, 16, 20, 52 S.Ct. 275, 76 L.Ed. 587) for administrative purposes, and thereafter Congress re-enacts the provision without substantial change, the courts will accept that construction unless it be "plainly erroneous."
Obviously, the provision here involved of this act is ambiguous. When the words "taken out by decedent upon his own life" are attempted to be applied in practical administration to the subject-matter of life insurance, varying situations are found which at once present difficulties as to what the congressional intention was. It must be kept in mind that this is an estate tax upon the proceeds from life insurance. An estate tax is an excise tax upon the privilege of transferring or transmitting property by reason of death and is not a tax on the property itself.[3] It follows that, unless there is such transfer from the decedent  unless there was something which passed from the decedent upon death  there has been no transfer; no privilege of transfer has been exercised; and there is nothing which can be subjected to an excise tax on such privilege. Therefore, where life insurance proceeds are involved, the initial inquiry is as to what, if anything, has passed from the decedent because of his death.
*108 Obviously, the proceeds of a life insurance policy pass directly from the insurer to the designated beneficiary without in any sense being transferred by the one whose life is insured (Chase National Bank v. United States, 278 U.S. 327, 334, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388)  this occurs as the result of the insurance contract. However, the insurance contract often provides for some control by the insured  such as powers to change beneficiary, to borrow against the policy, to cancel the policy, or to take the surrender value thereof. Such powers, of course, cease with the death of the insured which matures the policy. The existence of such powers (ceasing at death) are regarded as incidents of ownership which are sufficient to make the proceeds of the policy subject to an estate tax. Chase National Bank v. United States, 278 U.S. 327, 334-338, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388).[4] Being thus within the power of Congress to tax upon death of the insured the proceeds of life insurance policies where such incidents of ownership are accorded him by the policy, the next inquiry is as to the extent to which Congress has provided for such tax. Paragraph (g) of section 302 of this act (26 U.S.C.A. § 411(9) provides for inclusion within the taxable gross income of all proceeds, exceeding $40,000, receivable by beneficiaries (other than the estate) from policies taken out by the decedent upon his own life. Paragraph (h) of the section (26 U.S.C.A. § 411(h) expressly applies the section to "powers * * * made, created, arising, existing, exercised, or relinquished" within paragraph (g). From these provisions of the act it would appear that the statute rather broadly covers the situation (as to beneficiaries other than the estate) where the insured has retained any powers which are incidents of ownership or control.
This does not, however, entirely solve our problem. The consideration that the premiums were paid by the insured was an element in the Chase National Bank Case in reaching the conclusion that these "incidents of ownership" in the insured made the proceeds of the policies subject to estate taxation. At page 337 of 278 U.S., 49 S.Ct. 126, 128, 73 L.Ed. 405, 63 A.L.R. 388, the court says: "Obviously, the word `transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Section 402(c) [Revenue Act 1921] taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book, for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value or proceeds at the time of death. It is of some significance also that by the local law applicable to the insurer and the insured in this case, a beneficiary's rights in the policy and its proceeds are deemed to be the proceeds of the premiums expended by the insured and as such recoverable in full by one having an equitable claim attaching to the premiums. Holmes v. Gilman, 138 N.Y. 369, 34 N.E. *109 205, 20 L.R.A. 566, 34 Am.St.Rep. 463." (Italics added.)
Also the departmental regulations have always recognized that the source of the premiums has a vital bearing on the construction of the language now in question. The earliest regulation brought to our attention is article 25 of Regulations 68.[5] In that regulation, in article 25 of Regulations 70, and in article 25 of Regulations 80, the effect of the payment of premium by the beneficiary appears, although with varying force.
Thus it appears that, while it is not directly determined in the Chase National Bank Case that payment of premium by the beneficiary controls, yet it is decidedly intimated; that such payment has been recognized as controlling by the department for years until the regulation (article 25 of Regulations 80) promulgated in 1934; and that it is given an influence there even in that regulation. In this uncertain condition this court is faced at least with an ambiguity as to whether payment of premium by the beneficiary should exclude the resulting proceeds from the effect of this statute. In our search to solve this uncertainty, we think the rule of construction urged by appellant is pertinent.
In applying this rule, we find an ambiguity of meaning in this respect; that the department has consistently and continuously recognized the effect of payment by the beneficiary; that the Congress has re-enacted this identical language while such departmental construction thereof was being applied in administration; that the Supreme Court has strongly intimated that the source of premiums was an element in the subjection of life insurance proceeds to such character of tax. Obviously, we cannot in such situation say (nor would we do so independently thereof) that Regulations 70 is so "plainly erroneous" as a construction of the act that we should reject it. On the contrary, we deem it a rational, plausible meaning. This meaning should prevail unless Regulations 80 can be regarded as superseding and controlling.
It is to be expected that, as experience is acquired through administration of a statutory provision, the executive regulations will develop  will be broadened, particularized, and changed. Such has been the history of the regulations as to this statutory provision, as shown by the above three successive regulations. In such development it is natural that the executive will, at times, reverse itself. All such interpretative regulations applicable should be considered by the courts when construing a statute. But, if the courts consider themselves bound to follow executive constructions approved by congressional re-enactment unless such constructions are "plainly erroneous," it must follow that they should consider the executive similarly bound and regard such subsequent construction by the executive from that standpoint. Therefore such subsequent construction does not prevent application of the above rule of statutory construction, but is valuable mainly as bearing upon the "plainly erroneous" character of the earlier approved construction. In Bliss v. Commissioner (C.C.A.) 68 F.(2d) 890, 893, the Second Circuit held that the subsequent change by the Commissioner did not prevent application of the above rule of construction, and in Mayes v. Paul Jones & Co. (C.C.A.) 270 F. 121, 129, 130, the Sixth Circuit denied any power in the executive to change, by subsequent regulation, where Congress had adopted a long-continued prior departmental construction.
Here, Regulations 80 is, in part, a reversal or at least a limitation of Regulations 70. Where Regulations 70 excluded from taxation the proportion of the insurance proceeds paid for by the beneficiary, Regulations 80 does so only if no incidents of ownership in the policy remained in the insured during lifetime. In 70 (as in the earlier Regulations 68), the criterion is payment of premium. In 80, it is incidents of ownership. Considering the language of the statutory provision, it would seem the standard of construction laid down in Regulations 70 is more consonant therewith than that of 80 in those respects where the two are in conflict. At least it is clear that Regulations 80 has not revealed a standard which shows Regulations 70 to be "clearly erroneous." The result is that the later regulation cannot, *110 under the situation here, be held to replace or change the effect of the earlier regulation; that the redetermined assessment was excessive to the extent that it included that proportion of the proceeds from the four Union Central policies purchased by the premiums paid by appellant; and that such proportion of the proceeds are not within the intendment of section 302.

2. The Offset.
The proceeds of the New York Life and of the Mutual Benefit policies were never included in the gross estate for taxation. Appellee claims that they should have been, and seeks an offset of the tax due thereon. There is no dispute as to the right of appellee to seek an offset or of the amount of the tax due if the facts here justify the inclusion of these proceeds in the taxable gross estate. The sole issue is whether such proceeds are part of the gross estate in a taxable sense.
These policies were issued some years before the Revenue Act of 1926. They were applied for and the entire premiums paid by the decedent. In each of the policies appellant was the sole beneficiary with a provision that, should she not survive insured, the proceeds were payable to his estate. There was no reserved right in the insured to change the beneficiary.
The Mutual Benefit policy provided that no assignment of the policy should take effect until written notice be given the company; that, while the policy is in full force, the company will "loan up to the limit secured by its cash surrender value upon a satisfactory assignment of the policy to the company as collateral security"; and that, if (after two annual premiums) the policy should lapse for nonpayment of premiums and there be any loan on the policy, the loan shall be paid from the cash surrender value and any balance be applied to extended or paid up insurance or such balance "paid in cash, if the original policy be fully surrendered within three months from date of lapse." The New York Life policy was on a "limited-tontine" plan. It provided that any assignment of the policy must be in duplicate to be sent to the company "for acknowledgment" and one copy to be retained by the company.
For several reasons, appellee contends the above provisions of these policies left incidents of ownership in decedent which prevented them fully vesting in appellant, and that, because thereof, the proceeds formed part of the taxable gross estate. The first of these reasons is that the beneficial interest in the policies passed to appellant only if she survived decedent  otherwise passing to the estate. The argument is that "the death of the decedent * * * was the indispensable event giving rise to, or at least enlarging, valuable property rights in the appellant not theretofore possessed or enjoyed." In support, appellee cites cases dealing with property transfers inter vivos dependent upon and vesting only at death of the transferer. Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. ___, definitely determines this argument against appellee  see Industrial Trust Co. et al. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L. Ed. ___, and also see Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. ___ (a trust transfer inter vivos).
Another reason advanced by appellee is that all life insurance is taxable because it "is per se testamentary." The Bingham and Industrial Trust Company Cases rule the contrary since each of them holds certain policies outside the statute.
The final reason urged is that "under each of the policies the decedent had the right to make an assignment or to pledge the policy for a loan" and that these were such incidents of ownership as to make the proceeds of the policies taxable as part of the gross estate. Appellant denies that such incidents existed, and urges that such a vested estate passed to her by the terms of the policies that no assignments or loan pledges thereof could be made without her consent.
The New York Life policy expressly provided that the contract should be construed under the laws of the state of New York, which was expressly agreed to be the place where the contract was made. The Mutual Benefit policy (home office of the company being in New Jersey) had no provision of this character. The residence of insured and appellant beneficiary was in Minnesota, where he died and his estate was administered. Whether tested by New York (Levy's Estate v. Commissioner, 65 F.(2d) 412, 415 [C.C.A.2]; Baron v. Brummer, 100 N.Y. 372, 3 N.E. 474; Whitehead v. New *111 York Life Ins. Co., 102 N.Y. 143, 6 N.E. 267, 55 Am.Rep. 787; Schneider v. United States Life Ins. Co., 123 N.Y. 109, 25 N. E. 321, 20 Am.St.Rep. 727); or Minnesota (Birge v. Franklin, 103 Minn. 482, 115 N. W. 278; Wallace v. Mutual Benefit Life Ins. Co., 97 Minn. 27, 106 N.W. 84, 3 L.R. A.(N.S.) 478; Allis v. Ware, 28 Minn. 166, 9 N.W. 666; Ricker v. Charter Oak Life Ins. Co., 27 Minn. 193, 6 N.W. 771, 38 Am.Rep. 289) law, it seems that no assignment or loan pledge of these policies could have been made without the consent of appellant. This seems to be the rule generally. In re Simmons & Griffin, 255 F. 521 (C.C.A.1); 2 Couch's Cyclopedia of the Law of Insurance, § 308 and numerous citations thereto.
However, appellee contends that, even though no assignment or loan pledge could have been of these policies without the consent of appellant beneficiary, yet the proceeds are taxable under the principle of Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. ___. The Helvering Case is not applicable for two reasons: First, that case had to do with another provision (section 302(d) of the Revenue Act of 1926, 44 Stat. 70, 71) which is entirely different and was intended by Congress to be different from section 302(g) of that act, here involved. Congress expressly recognized and treated proceeds from insurance on the life of a decedent as a separate matter from the situation dealt with in section 302(d). Therefore, section 302(g) is not controlled or affected by section 302(d), and a construction of the latter is not controlling in determining the meaning and application of the former. Section 302(g). Second, section 302(d) deals only with "transfers" of property from the decedent. Here there was no transfer from decedent within the meaning of that section or at all. The property rights here find birth in the policy; are as between the beneficiary and the insurer; and the rights of the beneficiary came into being with the life of the policy. The result is that the proceeds of these two policies are not taxable under the Revenue Act of 1926 as part of the gross estate of this decedent.
The case should be and is reversed, with instructions to enter judgment for refund to appellant of the tax paid on the aliquot part of the proceeds of the four Union Central policies represented by her contribution to the premiums thereon and in her favor on the offset.
NOTES
[1] This regulation is as follows:

"Taxable insurance.  The statute provides for the inclusion in the gross estate of insurance taken out by the decedent upon his own life, as follows: (a) All insurance receivable by, or for the benefit of, the estate; (b) all other insurance to the extent that it exceeds in the aggregate $40,000.
"The term `insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies, operating under the lodge system. Insurance is deemed to be taken out by the decedent in all cases where he pays all the premiums, either directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all the premiums are actually paid by the beneficiary. Where a portion of the premiums were paid by the beneficiary and the remaining portion by the decedent the insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid." (Italics added.)
[2] This later regulation is as follows:

"Taxable insurance.  The statute provides for the inclusion in the gross estate of insurance taken out by the decedent upon his own life, as follows: (a) All insurance receivable by, or for the benefit of, the estate; (b) all other insurance to the extent that it exceeds in the aggregate $40,000.
"The term `insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies operating under the lodge system. Insurance is considered to be taken out by the decedent in all cases, whether or not he makes the application, if he pays the premiums either directly or indirectly, or they are paid by a person other than the beneficiary, or decedent possesses any of the legal incidents of ownership in the policy. Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The decedent possesses a legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent." (Italics added.)
[3] Phillips v. Dime Trust & S. D. Co., 284 U.S. 160, 165, 52 S.Ct. 46, 76 L. Ed. 220; Milliken v. United States, 283 U.S. 15, 24, 51 S.Ct. 324, 75 L.Ed. 809; Coolidge v. Long, 282 U.S. 582, 609, 51 S.Ct. 306, 75 L.Ed. 562; Tyler v. United States, 281 U.S. 497, 502, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Farmers' Loan Co. v. Minnesota, 280 U.S. 204, 215, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; Chase Nat. Bank v. United States, 278 U.S. 327, 334, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Blodgett v. Silberman, 277 U.S. 1, 8, 48 S.Ct. 410, 72 L. Ed. 749; Keith v. Johnson, 271 U.S. 1, 6, 46 S.Ct. 415, 70 L.Ed. 795; Rhode Island Trust Co. v. Doughton, 270 U.S. 69, 80, 46 S.Ct. 256, 70 L.Ed. 475, 43 A.L.R. 1374; Frick v. Pennsylvania, 268 U.S. 473, 492, 500, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Stebbins v. Riley, 268 U. S. 137, 140, 45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454; Edwards v. Slocum, 264 U.S. 61, 62, 44 S.Ct. 293, 68 L.Ed. 564; Y. M. C. A. v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Greiner v. Lewellyn, 258 U.S. 384, 387, 42 S.Ct. 324, 66 L.Ed. 676; New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660; Watson v. State Comptroller, 254 U.S. 122, 125, 41 S.Ct. 43, 65 L.Ed. 170; Maxwell v. Bugbee, 250 U.S. 525, 536, 40 S.Ct. 2, 63 L. Ed. 1124; United States v. Jones, 236 U.S. 106, 111, 35 S.Ct. 261, 59 L.Ed. 488, Ann.Cas.1916A, 316; Wheeler v. Sohmer, 233 U.S. 434, 440, 446, 34 S.Ct. 607, 58 L.Ed. 1030; Hertz v. Woodman, 218 U.S. 205, 219, 30 S.Ct. 621, 54 L.Ed. 1001; Buck v. Beach, 206 U.S. 392, 408, 27 S.Ct. 712, 51 L.Ed. 1106, 11 Ann.Cas. 732; Chanler v. Kelsey, 205 U.S. 466, 478, 27 S.Ct. 550, 51 L.Ed. 882; Cahen v. Brewster, 203 U.S. 543, 550, 27 S.Ct. 174, 51 L.Ed. 310, 8 Ann. Cas. 215; Campbell v. California, 200 U. S. 87, 94, 26 S.Ct. 182, 50 L.Ed. 382; Snyder v. Bettman, 190 U.S. 249, 251, 23 S.Ct. 803, 47 L.Ed. 1035; Blackstone v. Miller, 188 U.S. 189, 203, 23 S.Ct. 277, 47 L.Ed. 439; Billings v. Illinois, 188 U.S. 97, 104, 23 S.Ct. 272, 47 L.Ed. 400; Moore v. Ruckgaber, 184 U.S. 593, 596, 22 S.Ct. 521, 46 L.Ed. 705; Eidman v. Martinez, 184 U.S. 578, 589, 22 S.Ct. 515, 46 L.Ed. 697; Orr v. Gilman, 183 U.S. 278, 289, 22 S.Ct. 213, 46 L.Ed. 196; Sherman v. United States, 178 U.S. 150, 20 S.Ct. 779, 44 L.Ed. 1014; Murdock v. Ward, 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009; Plummer v. Coler, 178 U.S. 115, 134, 20 S.Ct. 829, 44 L.Ed. 998; Fidelity Ins. Trust & S. D. Co. v. McClain, 178 U.S. 113, 20 S.Ct. 774, 44 L.Ed. 998; High v. Coyne, 178 U.S. 111, 112, 20 S.Ct. 747, 44 L.Ed. 997; Knowlton v. Moore, 178 U.S. 41, 47, 20 S.Ct. 747, 44 L.Ed. 969; Magoun v. Illinois Trust & Savings Bank, 170 U.S. 283, 288, 18 S.Ct. 594, 42 L.Ed. 1037.
[4] Also see Industrial Trust Co. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. ___; Bingham v. United States, 296 U.S. 211, 219, 56 S.Ct. 180, 80 L.Ed. ___; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. ___; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. ___; Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 88, 56 S.Ct. 70, 80 L.Ed. ___; Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. ___, 100 A.L.R. 1239; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. ___; Griswold v. Helvering, 290 U.S. 56, 58, 54 S.Ct. 5, 78 L.Ed. 166; Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880; Guaranty Trust Co. v. Blodgett, 287 U.S. 509, 513, 53 S.Ct. 244, 77 L.Ed. 463; Gwinn v. Commissioner of Internal Revenue, 287 U.S. 224, 228, 53 S.Ct. 157, 77 L.Ed. 270; Phillips v. Dime Trust & S. D. Co., 284 U.S. 160, 165, 52 S.Ct. 46, 76 L.Ed. 220; Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 75 L.Ed. 996; Coolidge v. Long, 282 U.S. 582, 598, 51 S.Ct. 306, 75 L.Ed. 562; Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Reinecke v. Northern Trust Co., 278 U.S. 339, 345, 49 S. Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565; Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830.
[5] That regulation is as follows: "Insurance is deemed to be taken out by the decedent in all cases where he pays all the premiums, directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all the premiums are actually paid by the beneficiary."